ATTORNEY FOR APPELLANT
Bart M. Betteau
New Albany, Indiana

ATTORNEYS FOR AMICUS CURIAE
Susan K. Carpenter
Public Defender of Indiana

James T. Acklin
Asst. Chief Deputy Public Defender
Indianapolis, Indiana

Indiana Public Defender Council
Larry A. Landis
Stacy R. Uliana
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana



FILED
Nov 29 2011, 11:43 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 13S01-1007-PC-399

DAVID HOPPER,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

Appeal from the Crawford Circuit Court, No. 13C01-0910-PC-2
The Honorable K. Lynn Lopp, Judge

On Petition for Rehearing

**November 29, 2011**

**Shepard, Chief Justice.**

Appellant David Hopper has been seeking to set aside a 2005 conviction for driving while intoxicated, on grounds that he had not been advised or warned of the risks of dealing with prosecutors without a lawyer. We earlier affirmed the trial court's denial of his petition for post-conviction relief.

The Attorney General has petitioned for rehearing, arguing that the rule announced in our prior opinion presents an unnecessary and impractical deviation from precedents established by the U.S. Supreme Court, and that it is unsupported by public policy. We grant rehearing to address the role and necessity of such advisements.

**Facts and Procedural History**

On April 18, 2005, David Hopper was charged with one count of operating a vehicle with a BAC of .08% or more, a class C misdemeanor,[1] and one count of operating a vehicle while intoxicated in a manner endangering person, a class A misdemeanor.[2] This was not Hopper's first encounter with the law, having been convicted in 2000 of an offense that resulted in a suspended driver's license. He proceeded pro se in 2000 as well.

At his initial hearing for the 2005 charges, Hopper was provided with a form entitled "Your Rights in Court." (App. at 19–20.) Amongst other things, the form told Hopper:

> You have the right to be represented by an attorney now, and at every stage of the court proceedings. If you want an attorney and cannot afford one, tell the Judge. If the case is serious enough, the Judge will appoint a Public Defender to help you

---

[1] Recodified at Ind. Code § 9-30-5-1(a) (2010)).

[2] Recodified at Ind. Code § 9-30-5-2(a), (b) (2010)).

at public expense. You have the right to hire an attorney even if you intend to plead guilty and the right to a short continuance for that purpose.

(App. at 46.) The form also told Hopper he had the right to represent himself, and that if he decided to do so—regardless of whether he intended to plead guilty or not guilty—he needed to sign a "Waiver of Attorney" on the back side of the form. In addition, the form gave extensive detail about the effects of pleading guilty or not guilty and several admonishments that if Hopper did not understand his rights or the consequence of a given plea, he was to ask the judge or request an attorney. Hopper signed the "Waiver of Attorney" provision, which said:

> I do not wish to be represented by an attorney in this case. I understand that I have the right to an attorney and to a continuance to talk to an attorney. I know that if I am without funds and the case is serious enough, the Judge will appoint a Public Defender to represent me. I freely and voluntarily give up my right to be represented by an attorney.

(App. at 47.)[3] The court entered a plea of not guilty for Hopper and set an initial pretrial conference for May 19, 2005. Hopper then began plea negotiations with the State and subsequently pled guilty to the class A misdemeanor OWI charge. Following a colloquy about Hopper's rights, mental status, the nature of the charge, and the factual basis, the trial court accepted Hopper's plea and entered a conviction.

---

[3] The Court of Appeals correctly pointed out that the form incorrectly stated the standard for the appointment of counsel to indigents in that it said counsel would be appointed if "the case is serious enough." Hopper v. State, 925 N.E.2d 499, 504–05 (Ind. Ct. App. 2010). However, Hopper's claim does not rest in any substantial way on this aspect of the waiver form.

Four years later, Hopper petitioned for post-conviction relief, claiming he had not validly waived counsel before deciding to proceed pro se and that his plea negotiations were the product of this invalid waiver.[4] The post-conviction court denied Hopper's petition. Hopper appealed.

The Court of Appeals reversed, holding that Hopper's waiver of counsel was invalid because the court had not warned him that he might achieve better results in plea bargaining with the help of a lawyer. Hopper v. State, 925 N.E.2d 499, 505–06 (Ind. Ct. App. 2010).

We granted transfer and announced, using our supervisory authority, that future defendants expressing a desire to proceed without counsel must receive a Faretta[5] advisement and "also be informed that an attorney is usually more experienced in plea negotiations and better able to identify and evaluate any potential defenses and evidentiary or procedural problems in the prosecution's case." Hopper v. State, 934 N.E.2d 1086, 1088 (Ind. 2010). Our opinion explicitly declined to base its holding on either the Sixth Amendment or Article 1, Section 13, of the Indiana Constitution. Id.

The State's petition for rehearing followed.

## Standard of Review

Rehearing is a procedure through which an appellate court can recognize and correct errors in a preceding ruling. Griffin v. State, 763 N.E.2d 450 (Ind. 2002). A party seeking rehearing may do so only on issues raised in the original brief. Id. at 451. The claimed errors

---

[4] Hopper filed his petition for post-conviction relief because he had been arrested again, and sought to have the 2005 plea overturned and erased.

[5] Faretta v. California, 422 U.S. 806 (1975).

must be precisely articulated and go beyond a mere assertion that the original ruling was erroneous.  Id.  Nevertheless, "when a general rehearing is granted, the case stands before the court as if it had never been decided."  Id. (citing 5 Arch N. Bobbitt & Frederic C. Sipe, Bobbitt's Revision, Works' Indiana Practice § 111.3 (5th ed. 1979)).  When rehearing is granted only as to a specific issue, the original opinion will still stand except as to that particular point.  Id.  Accordingly, we treat this as a general rehearing.

## I.    Hopper's Plea Negotiations

We agree with Hopper that the entry of a guilty plea is a critical stage and a valid waiver of counsel is required for a defendant proceeding pro se.  We do not reach the same conclusion with regard to Hopper's plea bargain.

Hopper argues that plea negotiations are a critical stage of the criminal proceeding at which the right to counsel is required, absent a valid waiver.  (Appellant's Br. at 4–7.)  This contention appears aimed at the idea that due process is violated when a defendant is not warned about plea bargaining on his own, just as it is when a defendant is not warned about going to trial solo.

A defendant's right to counsel arises at any point during a criminal proceeding in which the absence of counsel would erode the defendant's right to a fair trial.  Hernandez v. State, 761 N.E.2d 845 (Ind. 2002).  This includes any critical stage in which "'(1) incrimination may occur or (2) where the opportunity for effective defense must be seized or be foregone.'"  Id. at 850 (quoting Casada v. State, 544 N.E.2d 189, 198 (Ind. Ct. App. 1989), trans. denied).  An initial hearing conducted under Indiana's statutory scheme is not a critical stage of the criminal proceeding requiring the presence of counsel.  Benner v. State, 580 N.E.2d 210 (Ind. 1991).

Hopper cites a single Indiana case in support of his argument that the plea bargain phase is a critical stage requiring a separate warning: Hood v. State, 546 N.E.2d 847 (Ind. Ct. App. 1989). (Appellant's Br. at 4–7.)

In Hood, the defendant was arrested, charged with theft and forgery, and held in jail awaiting his initial hearing. While in jail, the prosecutor told him that the State would forgo filing an habitual offender charge if the defendant agreed to plead guilty without counsel. At the initial hearing, Hood waived his right to counsel and pled guilty. The court accepted the pleas, but before sentencing Hood requested counsel and sought to withdraw his guilty pleas. The court denied the request and sentenced Hood to eight years. A post-conviction court found the guilty pleas to have been voluntary and intelligent. Id. at 849. The Court of Appeals reversed, holding that the prosecutor's actions in conditioning the plea agreement upon the explicit condition that Hood accept without consulting counsel tainted the subsequent waiver. Id. at 850.

There were, then, two particular factors that distinguish Hood's circumstances from Hopper's. First, in Hood the prosecutor threatened to add an additional charge as a manner of inducing the defendant to sign the agreement, and second, the plea agreement in Hood was explicitly contingent upon the defendant waiving his right to counsel.

Neither of those factors is present here. Hopper does not suggest that the prosecutor in his case threatened to add an additional charge if he refused the plea agreement.[6] And there is no evidence that the plea agreement was contingent upon Hopper continuing to proceed pro se. The agreement itself contains no such language (App. at 55–56), and Hopper provided no testimony detailing the conversation between himself and the prosecutor. (PCR Tr. at 9.) Moreover, Hood

---

[6] Even so, Hood recognizes that it is generally not inappropriate to use an habitual offender charge as leverage to encourage plea bargaining. Id. at 850 (citing Jackson v. State, 499 N.E.2d 215 (Ind. 1986)). In Hood, however, the conduct was inappropriate because it was coupled with the requirement that the defendant not seek counsel. Id.

6

involved a jail-house visit by the prosecutor, before the initial hearing occurred. Here, however, Hopper had already attended his initial hearing.[7] He was already aware of the charges against him and the range of punishments. And he had already made the initial public decision to waive his right to counsel.

This is not to say that Hood was wrongly decided. Rather, the principles for which it stands do not point to relief for Hopper.

Hopper further argues that his waiver of counsel on the "Your Rights In Court" form could not constitute a valid waiver of counsel at the subsequent plea negotiations. (Appellant's Br. at 7–16.)

The Sixth Amendment, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to counsel before he may be tried, convicted, and punished. Faretta v. California, 422 U.S. 806, 807 (1975). This protection also encompasses an affirmative right for a defendant to represent himself in a criminal case. Id. However, "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." Id. at 834. Because the defendant who waives his right to counsel and proceeds to trial unrepresented is forgoing "many of the traditional benefits associated with the right to counsel . . . . the accused must 'knowingly and intelligently' forgo those relinquished benefits." Id. "[H]e should be made aware of the dangers and disadvantages of self-representation, so that that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Id. at 835 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)).

---

[7] The record does not indicate whether Hopper was incarcerated between the April 2005 hearing and the May 2005 hearing.

There is no particular formula or script that must be read to the defendant. The information that must be given "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." Iowa v. Tovar, 541 U.S. 77, 88 (2004).

Courts determining whether a waiver of counsel for trial was made voluntarily and intelligently must consider (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. We have drawn these factors from case law in the Seventh Circuit, see United States v. Hoskins, 243 F.3d 407 (7th Cir. 2001), and applied them in situations as diverse as trial for battery, Poynter v. State, 749 N.E.2d 1122 (Ind. 2001), and for capital murder, Kubsch v. State, 866 N.E.2d 726 (Ind. 2007).

Hopper's contention is that the Sixth Amendment requires the same warnings and analysis. The U.S. Supreme Court has already answered this question in the negative.

In Tovar, a defendant who was a repeat drunk driver facing his third charge in four years contended that his right to counsel had been violated in the course of his first conviction because the trial court had not warned him about the disadvantages of waiving counsel before pleading guilty. The Iowa Supreme Court agreed, declaring that the Sixth Amendment required warnings about the possibility of achieving better outcomes with the aid of counsel. It set aside Tovar's earlier conviction. The U.S. Supreme Court reversed, holding that the Sixth Amendment does demand that a defendant who waives counsel "'knows what he is doing and his choice is made with eyes open,'" Tovar, 541 U.S. at 88 (quoting Adams, 317 U.S. at 279), but that advisements of this sort were required only when a defendant elects to go to trial without a lawyer and not for such a "straightforward" matter as pleading guilty to driving while intoxicated.

8

The decision in Tovar governs Hopper's Sixth Amendment claim, and he has not made any separate argument that a different result is required by the Indiana Constitution. Our earlier decision in this case likewise did not rest on the state constitution.


## II.     Hopper's Guilty Plea


The actual moment of truth in Hopper's 2005 proceeding arose when he pled guilty. As for what standard should be employed when a pro se defendant elects to plead guilty, Hopper argues that we should follow a line of cases stemming from Eaton v. State, 894 N.E.2d 213 (Ind. Ct. App. 2008), and overrule a line of cases stemming from Sedberry v. State, 610 N.E.2d 284 (Ind. Ct. App. 1993). The State argues the inverse. We think there is less competition among the cases than the parties do.


A.    Sedberry and Eaton.    As we indicated above, whether a defendant's waiver is voluntary and intelligent will depend upon an array of case-specific factors. Both we and the U.S. Supreme Court have deliberately eschewed any attempt to formulate a rigid list of required warnings, talismanic language, or formulaic checklist. See Tovar, 541 U.S. at 88; Leonard v. State, 579 N.E.2d 1294, 1296 (Ind. 1991) (rejecting the premise that guidelines for waiver set forth in Dowell v. State, 557 N.E.2d 1063 (Ind. Ct. App. 1990), were mandatory). That inquiry must therefore include consideration of "what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage." Patterson v. Illinois, 487 U.S. 285, 298 (1988).[8] This will of course play into the extent and

---

[8] In Patterson, for example, the U.S. Supreme Court held that in a post-indictment interrogation context, the Miranda warnings alone were sufficient because they warned of the dangers of self-incrimination and alerted to the right to have counsel present. Id. at 298–99. There was no substantially increased benefit in the use of counsel to the accused or expansion of the limited purpose served by an attorney when an accused is questioned. Id.

depth of warnings required in a given case. Id. Even then, however, such warnings are not the beginning and the end of the inquiry, even if they are wholly absent. As amicus Indiana Public Defender Council points out, pleas by unrepresented defendants bear special attention lest the system fail to protect the poor, the uneducated, or the naïve. (Amicus Br. at 2–3.)

Multiple reported decisions suggest that the courts have done just such a case-specific inquiry. See, e.g., Eaton, 894 N.E.2d at 215, 217–18 (distinguishing Greer, below, holding that a judge's inquiry during a probation revocation hearing was insufficient where the defendant's waiver was equivocal and the defendant had admitted some allegations without receiving advisements or a determination of competency); Greer v. State, 690 N.E.2d at 1217 (Ind. Ct. App. 1998) (probation violation hearing presented a different context than a trial, so warnings for that defendant were necessarily different); Redington v. State, 678 N.E.2d 114 (Ind. Ct. App. 1997) (warnings about proceeding to trial pro se would be superfluous when the defendant was pleading guilty); Sedberry, 610 N.E.2d at 287 (no reason to give the defendant warnings about going to trial pro se when the defendant was not doing so). The Court of Appeals in Hopper engaged in a similar case-specific inquiry. Hopper, 925 N.E.2d at 504–05.

Therefore, to the extent that the parties here argue that either Sedberry or Eaton represents the "controlling" line of cases, they are incorrect. These cases and others like them may serve as helpful comparative guideposts to trial and appellate courts. However, they do not relieve a reviewing court of the necessity to conduct a thoughtful examination of the record as a whole to determine whether a particular defendant, in a particular stage of a particular case, voluntarily and intelligently waived his right to counsel.

B. Hopper's Colloquy. We turn now to the trial court's colloquy with Hopper at the May 19, 2005, guilty plea hearing. The Indiana Code sets forth the advisements and inquiries a court must make before accepting a plea of guilty. Ind. Code § 35-35-1-2 (2008). These requirements include determining that the defendant understands the nature of the charges to which he is pleading, understands that by pleading guilty he waives certain trial-related rights, and understands the range of punishments he faces. Ind. Code § 35-35-1-2(a)(1)–(3). The court

10

must also determine that the plea is voluntary, and not the product of coercion. Ind. Code § 35-35-1-3 (2008). Finally, with regard to a pro se defendant, the Code requires that he have "freely and knowingly waived his right to counsel." Ind. Code § 35-35-1-1 (2008).

The colloquy between the trial court and Hopper on May 19, 2005, included the following inquiries:

COURT: Those of you here for criminal court, each of you have the following rights: Each of you have a right to a public and speedy trial by a jury in this county. You are presumed innocent unless and until the State proves your guilt beyond a reasonable doubt. You have a right to face all witnesses against you. To see, hear, question and cross examine those witnesses. You have a right to require witnesses to be present at any hearing or trial for the purposes of testifying on your behalf and at your request, subpoenas will be issued requiring witnesses to appear on your behalf. You have a right to remain silent and you cannot be required to give any testimony or make any statements to anyone. You have a right to be heard in your own defense at any hearing or trial concerning the charges against you. Anything you say, however, may be used against you . . . .

COURT: Mr. Hopper, is it your intent to enter a plea of guilty to Operating a Vehicle While Intoxicated as a Class "A" Misdemeanor, endangering a Person?

HOPPER: Yes.

* * *

COURT: You understand by pleading guilty here today, you'll give up each and everyone [sic] of the rights that I've previously read to you?

HOPPER: Yes.

COURT: If you had a trial and were found guilty, you'd have the right to make an appeal to the Court of Appeals or Supreme Court and by pleading guilty, you give up that right. You also have a right to be represented by an attorney now and at any later time. If you cannot afford an attorney, the Court will appoint one to represent you. And you want to proceed without an attorney, is that correct?

11

HOPPER: Yes.

\* \* \*

COURT: Anyone forcing you to enter a plea of guilty here today?

HOPPER: No.

COURT: You doing this on your own free will?

HOPPER: Yes.

(App. at 49–52.) The court also informed Hopper of the range of potential punishments and the consequences of Indiana's habitual traffic offender statute. (App. at 50–51.) In short, the court complied with the requirements of Indiana Code §§ 35-35-1-2 and 35-35-1-3.[9]

We have previously noted that "a plea hearing conducted in accordance with Indiana Code § 35-35-1-2 is the best way to assure that a defendant's plea is made voluntarily and intelligently." White v. State, 497 N.E.2d 893, 905 (Ind. 1986). "A defendant fully armed with all the information outlined in the statute is most able to make the voluntary and intelligent decision which the Indiana and U.S. Constitutions entitle him to make." Id. Such a plea is "unlikely to be found wanting in a collateral attack."[10] Id.

---

[9] While not challenged by Hopper here, the court also determined that an adequate factual basis existed for the plea. See Ind. Code § 35-35-1-3(b); (App. at 52–53).

[10] We discussed, in-depth, the history of these enumerated requirements and the extent to which they reflect—or do not reflect—constitutional rights. See White, 497 N.E.2d at 895–901. The standards for compliance with those statutory requirements—and the remedy for non-compliance—is fully explained in White. Id. at 905. Hopper does not, however, claim the judge failed to comply with the requirements of Section 35-35-1-2.

12

Much of the analysis from Hopper's waiver at his initial hearing applies here as well, though there are a few significant differences. First, the court's colloquy did not contain the misstatement in the "Your Rights In Court" form noted above. The court advised Hopper of his trial rights, including—several times—his right to counsel. The court also inquired about Hopper's competency and ability to understand the English language. (App. at 49–50.) It advised Hopper that he would give up all those trial rights if he pled guilty. The court then confirmed that, in light of these lost rights, Hopper still desired to proceed without counsel and to plead guilty.

Hopper's post-conviction relief transcript never casts doubt on his understanding of the colloquy—it focuses on whether he understood the "Your Rights In Court" form. (PCR Tr. at 7–9.) At all stages of the colloquy, Hopper's responses were direct and unequivocal. He never expressed any confusion or doubt as to the meaning of his rights, the consequences of the crimes, or the consequences of proceeding pro se and pleading guilty. This was a "clear and unequivocal request to proceed pro se" that was "'sufficiently clear that . . . the defendant should not be able to turn about and urge that he was improperly denied counsel.'" Dowell v. State, 557 N.E.2d 1063, 1065 (Ind. Ct. App. 1990) (quoting Anderson v. State, 267 Ind. 289, 294, 370 N.E.2d 318, 320 (Ind. 1977)), trans. denied.

The post-conviction court found against Hopper on his contention that the waiver he gave at his initial hearing was involuntary and unintelligent. Appealing from this negative judgment, Hopper can only prevail where all the evidence points toward an opposite conclusion. Kubsch v. State, 934 N.E.2d 1138 (Ind. 2010). After considering the totality of the circumstances surrounding Hopper's entry of a guilty plea, including the trial court's colloquy and Hopper's unequivocal response, and in light of the particular context of the plea agreement, we conclude that the post-conviction court was right that Hopper's waiver of counsel was voluntary and intelligent.

### III.    The "Hopper Advisement"

This brings us, finally, to the rule announced in our prior opinion.  The Court of Appeals had pointed out that counsel "should be better equipped to plea bargain with a prosecutor than a layperson."  Hopper, 925 N.E.2d at 504.  We, in turn, required that a defendant be advised "that an attorney is usually more experienced in plea negotiations and better able to identify and evaluate any potential defenses and evidentiary or procedural problems in the prosecution's case."  Hopper, 934 N.E.2d at 1088.  One can acknowledge the correctness of that statement and yet not conclude that an advisement along these lines need be mandatory.

First, as we have discussed above, it is apparent that neither the U.S. Constitution nor the Indiana Constitution require any particular formulaic language or magic words.  See Tovar, 541 U.S. at 77; Leonard, 579 N.E.2d at 1294.  The U.S. Supreme Court expressly rejected similar language in Tovar, and there are only modest differences between mandatory warnings about an attorney's skill at plea bargaining and the mandatory instructions concerning an attorney's skill at trial that we rejected in Leonard.

To be sure, there are circumstances in which discussion with a defendant about the value of counsel may be especially valuable.  As the Public Defender of Indiana has helpfully pointed out, some defendants who come from different cultures may not have a full understanding of the roles and risks in the American system.  (Amicus Br. at 3) ("Persons who are familiar only with the Mexican legal system would not be aware of the legal concepts that the Hopper advisement conveys . . . .").  One can agree with this observation and still "not agree, however, that such guidelines should constitute a rigid mandate setting forth specific inquiries that a trial court is required to make before determining whether a defendant's waiver of right to counsel is knowing, intelligent, and voluntary."  Leonard, 579 N.E.2d at 1296.

Second, our original opinion passed over a crucial question, the very one Mr. Hopper has presented:  is the absence of the instruction simply an additional factor to consider, or is the absence of the instruction a per se violation of one's right to counsel?  Put another way, where

14

such a warning was not made, is that omission by itself a sufficient grounds for setting aside a conviction?

The Hopper warning, like other advisements, is prophylactic. When it comes time (like today) to decide whether one who pled guilty should have his plea and conviction vacated, the question will be whether omission of an advisement means, per se, that the previously-convicted can start over. Thirty years ago, this Court embraced precisely that approach. If each of the advisements appeared, the defendant was presumed to have pleaded voluntarily and intelligently, and he stayed convicted. If even one advisement was missing, he was said to have acted involuntarily and unintelligently, and his conviction was set aside. Austin v. State, 468 N.E.2d 1027 (Ind. 1984); German v. State, 428 N.E.2d 234 (Ind. 1981).

This approach "created a virtual tidal wave of petitions by prisoners, some of whom [had] slumbered on their rights for five or ten years. It [had], by definition, afforded relief only to prisoners who have asserted their guilt before the trial judge and never recanted." White, 497 N.E.2d at 900. It visited felony convictions "with all the finality of default judgments in small claims court." Id. Observing that the result had been setting aside convictions "when the trial judge's omission was one which our common sense as human beings tells us was utterly harmless," we overruled German and Austin and resolved to examine whether pleas were voluntary and intelligent on a holistic basis to determine whether any omissions or other circumstances warranted starting over. Id.

As we explained in White, this analytical approach resembled the tracks used by the federal courts. See id. at 902–03. "Looking at the totality of the circumstances surrounding the plea, can it be said that the defendant understood his or her rights?" Id. at 902 (citing United States v. Wetterlin, 583 F.2d 346 (7th Cir. 1978)). "Was the error in the proceeding a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure?" Id. (citing Hill v. United States, 368 U.S. 424 (1962)). The focus there is on "the likely effect of the district judge's failure to advise a defendant properly before the plea is entered." Id. at 904. For federal courts, "the

15

question is not whether there was an omission but whether the defendant actually lacked knowledge and whether this ignorance made any difference." Id. at 905.

Hopper himself may be the best illustration of why the totality of the circumstances approach serves better than the per se rule. He claims only a lack of an advisement. He does not articulate any negative impact or particularized prejudice. He makes no argument of injustice or innocence. He certainly never says, "I didn't do it." In fact, counsel acknowledged that this sort of attack would best suit those who are (like Hopper) guilty, but seek to have those convictions set aside to prevent facing habitual or repeat offender charges. Hopper never offers evidence that he would have received a better deal with advice of counsel or that he would have accepted counsel if the judge had told him that lawyers were so much better at plea bargaining.[11]

Hopper thus urges adoption of the per se approach to the warning we earlier mandated and understandably expresses surprise that the advisement was deemed so important that mandating it was thought necessary, but not so important as to warrant granting relief to the defendant who filed the appeal.

In contrast to the per se rule, the totality of the circumstances test asks more searching questions. Was the defendant's decision to forgo counsel or to plead guilty voluntary and

---

[11] Cf. id. at 901 ("White does not claim that he was coerced into pleading guilty; he does not claim that had he known the minimum sentence he would have insisted on going to trial rather than pleading guilty. Indeed, he does not even claim that he did not know the minimum sentence; he claims only that the trial judge did not tell him the minimum sentence."). The story of Driver v. State, 486 N.E.2d 664 (Ind. Ct. App. 1985) (table), described in White, is also pretty similar to the sequence of events that Mr. Hopper presents.

Driver pleaded guilty to a felony in 1969. In 1982, two felonies later and now facing an habitual offender charge, he petitioned for post-conviction relief, alleging a thirteen-year-old violation of his rights. Our old per se approach made such petitions a relatively simple process, despite Driver's acknowledgment that he had no reason to challenge his 1969 conviction until he faced an habitual offender charge. White, 497 N.E.2d at 900 n.7 ("To my knowledge, there wasn't any reason. I didn't know that the charge would ever be used against me again.").

intelligent? Taken as a whole, did the encounter afford a defendant due process, or was it seriously unfair in some respect?

We expect that judicial inquiries about such questions, by both trial and appellate judges, will be as fulsome as each situation requires to separate just results from unjust results. Looked at this way, an offender like Hopper, who lifts up no misstep in his earlier conviction save a warning about the valuable help of lawyers, makes no case for relief. On the other hand, a defendant like Tim Hood, who was threatened by a prosecutor with habitual offender charges unless he waived counsel, should get relief whether the court gave him an advisement or not.

While we do not doubt the value of the Hopper advisement's language in particular stages of particular cases with particular defendants, the notion that such language should be mandatory in all stages of all cases with all defendants is misplaced. "'Matters of reality, and not mere ritual, should be controlling.'" Id. at 904 (quoting United States v. Frazier, 705 F.2d 903, 907 (7th Cir. 1983)).

### Conclusion

Accordingly, we affirm the judgment of the post-conviction court.

Dickson, and David, JJ., concur.
Rucker, J., dissents with separate opinion in which Sullivan, J., concurs.

17

**Rucker, J., dissenting.**

Because I believe our original opinion in this case is sound, I disagree with the majority's decision to grant the State's petition for rehearing.

At the outset I observe that although declaring a rehearing petition "must . . . go beyond a mere assertion that the original ruling was erroneous," Slip op. at 4 (citing <u>Griffin v. State</u>, 763 N.E.2d 450-51 (Ind. 2002)), the majority nonetheless entertains and effectively grants the State's petition even though the State's claim is that this Court's original opinion was wrongly decided. In fact the State initially sought transfer from a divided opinion of the Court of Appeals which held that Hopper was entitled to an advisement on the desirability of consulting an attorney before pleading guilty. <u>See</u> <u>Hopper v. State</u>, 925 N.E.2d 499 (Ind. Ct. App. 2010). In seeking transfer the State complained about the perils and pitfalls inherent with such an advisement. We granted transfer. And although granting Hopper himself no relief – a matter I touch upon below – we agreed with the Court of Appeals' general proposition. The State now seeks rehearing making essentially the same arguments it made before. Nothing has changed. Under these circumstances alone, this Court should deny the petition for rehearing.

The majority spills much ink to conclude that "the post-conviction court was right that Hopper's waiver of counsel was voluntary and intelligent." Slip op. at 13. But in doing so it refutes a proposition that our original opinion did not assert. In a collateral attack the petitioner has the burden of proving that he did not knowingly and intentionally waive his right to the assistance of counsel. <u>See</u> <u>Hall v. State</u>, 849 N.E.2d 466, 472 (Ind. 2006). And largely for the reasons the majority sets forth it is unlikely that the advisement we announced in our original opinion would have enlightened Hopper's decision whether to seek counsel or represent himself. Indeed although the majority glosses over the fact, we affirmed Hopper's conviction and thus he was granted no relief despite our announcing an advisement that now bears his name.

Further, the majority laments "our original opinion passed over a crucial question . . . : is the absence of the instruction simply an additional factor to consider, or is the absence of the instruction a per se violation of one's right to counsel?" Slip op. at 14. But rather than address

this perceived inadequacy and clarify that the advisement is best understood as an additional factor to be considered, the majority creates a straw man characterizing the advisement as a "per se" rule and a "rigid mandate," id., and then knocks it down by explaining why such rules and mandates have not worked in the past.

I am hard pressed to understand why the majority apparently thinks it is a bad thing or otherwise inappropriate simply to provide pro se – and likely indigent – defendants with such a modest advisement as: "an attorney is usually more experienced in plea negotiations and better able to identify and evaluate any potential defenses and evidentiary or procedural problems in the prosecution's case." Hopper, 934 N.E.2d at 1088. Indeed except for its straw man argument the majority does not even attempt to refute our observations that "[s]uch an advisement will require minimal additional time or effort" and "we do not believe it will impose significant burdens on the judicial process." Id. As one commentator has observed, "Substantive criminal law contains many complexities – intent standards, jurisdictional provisions, defenses, and so forth. The defendant may be 'guilty' in a layman's sense, and so be willing to confess, and yet may have a viable defense that he ought to invoke, or may be pleading guilty to the wrong grade of crime." William J. Stuntz, Waiving Rights in Criminal Procedure, 75 Va. L. Rev. 761, 830 (1989).

The value of a Hopper advisement goes well beyond the direct benefits related to the charged crime and protecting a defendant's constitutional rights. Uncounseled pro se defendants may very well plead guilty even to certain misdemeanor offenses that carry devastating collateral consequences ranging from deportation, to eviction from public housing, to barriers in employment.[1] These are the very types of considerations that could have a significant bearing on whether a pro se defendant is wisely deciding to enter a plea of guilty. The modest Hopper

---

[1] See ABA Standards for Criminal Justice: Collateral Sanctions and Discretionary Disqualification of Convicted Persons 9 (3d ed. 2004). As of November 28, 2011, the ABA catalogs 342 adult collateral consequences statutes in Indiana. See Adult Collateral Consequences Project, ABA Criminal Justice Section, http://isrweb.isr.temple.edu/projects/accproject/pages/GetStateRecords.cfm?State=IN (last visited Nov. 28, 2011).

advisement would be a valuable step in addressing these, and other, real-life consequences. I do not disagree that a <u>Hopper</u> advisement is not necessarily required by the Sixth Amendment[2] or by the Indiana Constitution. <u>See</u> slip op. at 8. Nor do I advocate that the lack of an advisement would automatically result in reversal of a defendant's conviction. But the advantages of giving such an advisement, especially at the initial hearing stage of the proceedings, far outweigh any disadvantages of doing so.

In the end I would deny the State's petition for rehearing, and reaffirm our original opinion in this case. Therefore I respectfully dissent.

Sullivan, J., concurs.

---

[2] I note, however, that the U.S. Supreme Court decision on which the majority relies announces a narrow holding. In fact the Court explicitly declared that "States are free to adopt by statute, rule, or decision any guides to the acceptance of an uncounseled plea they deem useful." <u>Iowa v. Tovar</u>, 541 U.S. 77, 94 (2004).

3