**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jun 18 2013, 6:14 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CARLOS I. CARRILLO**
Ball Eggleston PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THOMAS A. DEXTER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 79A05-1210-PC-557 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Les A. Meade, Judge
Cause No. 79D05-1203-PC-1

June 18, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Thomas A. Dexter appeals the denial of his petition for post-conviction relief. We affirm.

## ISSUES

Dexter raises three issues, which we restate as follows:

I.  Whether the post-conviction court erred in determining that Dexter voluntarily and intelligently waived his right to counsel at his guilty plea hearing.

II.  Whether the post-conviction court erred in determining that laches precluded relief.

III.  Whether Dexter received ineffective assistance of post-conviction counsel.

## FACTS AND PROCEDURAL HISTORY

In early 2000, the State charged Dexter with twenty-seven counts of theft in relation to a series of bad checks he wrote at Wal-Mart, Meijer, and Payless stores in Tippecanoe County. On April 3, 2000, Dexter had an initial hearing. The trial court advised him that he had the right to a public defender if he could not afford his own attorney. However, the court informed Dexter that if he was an able-bodied person and could work, then the court would "require [Dexter to] go out there to make a good faith effort to hire your own attorney first before [asking] the taxpayers to use their money to hire your lawyer for you." Tr. Ex. Vol., Defendant's Ex. B. Dexter, who was free on bond pending trial, told the court that he worked thirty-four hours a week and paid child support and rent. The court told Dexter to "go out there and get another job and earn some money to pay your way." *Id*.

2

Dexter next appeared before the trial court on May 5, 2000, and the court asked Dexter what efforts he had made to hire an attorney. Dexter admitted he had "made no efforts," asserting that he spent his off-work time caring for his fiancée, who was experiencing complications in her pregnancy. *Id.* The court asked Dexter if he had enough money to "take care of all your necessities," and Dexter said, "Yeah." *Id.* The court concluded, "Well, okay then you have enough money to go hire a lawyer. That's a necessity right now." *Id.* The trial court further advised Dexter to "come back here with a lawyer on the nineteenth." *Id.*

Dexter did not hire a lawyer. Instead, he entered into a plea agreement with the State. Dexter agreed to plead guilty to two counts of theft, both as Class D felonies, in connection with two acts of exerting unauthorized control over a Meijer store's property with intent to deprive Meijer of the property's value. In exchange, the State agreed to dismiss the other charges.

On May 31, 2000, Dexter appeared before the trial court, along with other defendants, for a guilty plea hearing. Before the hearing, Dexter signed a form advising him of his rights. The form provided, among other advisements,

> You have the right to be represented by an attorney now and at every stage of the court proceedings. If you are charged with a felony or misdemeanor and you want an attorney but cannot afford to hire your own attorney, tell the judge. The judge will ask you questions under oath to see if you qualify to have an attorney represent you at public expense. If the judge appoints an attorney, you may be ordered to pay back all or part of the cost of the attorney's services to you. If you first decide you are going to hire your own attorney but later are unable to do so, you can come back to court and ask the judge to appoint an attorney for you.

Appellant's App. p. 44.

3

Toward the bottom of the form, a paragraph captioned "ACKNOWLEDGEMENT OF RIGHTS" provided:

> I read, write, and understand the English language. I have read Your Rights in Court. I understand my rights explained in this paper and by the judge. I freely, knowingly, and voluntarily waive my rights and want to plead guilty. My guilty plea is my own free and voluntary act. I am not under the influence of alcohol, medication or controlled substances at this time. No promises, threats or guarantees, other than any plea agreement, were made to get me to plead guilty in this case. I understand the charge(s) to which I am pleading guilty and the consequences of my plea of guilty. I admit as true the essential facts of the charge(s) to which I am pleading guilty. I agree to waive any defenses I may have raised at trial . . . . I have been given enough time to think about what I am doing. I am 22 years old. I completed the 12[th] grade in school.

*Id.* at 45. Dexter signed his name and stated the date under this paragraph. He also signed his name and stated the date under the last paragraph on the form, captioned "WAIVER OF ATTORNEY:"

> I understand my right to be represented by an attorney. I know I can ask to continue this case to give me time to talk to an attorney. I know the court could appoint an attorney for me if I cannot afford to hire my own attorney. But I want to represent myself and freely, knowingly, and voluntarily waive my rights to an attorney in this case. I understand the consequences of this waiver.

*Id.*

At the guilty plea hearing, the trial court asked Dexter and other defendants the following questions, to which Dexter responded:

[Court]: Has everybody carefully read the written advice of rights form or had it read to you? Has everybody read through or had read to [sic] the possible penalties section, and did you each sign your own written advice of rights form where it says acknowledgement of rights? And for those of you who are without counsel today, have you also read carefully the paragraph called waiver of attorney? And if so, does your

4

> signature mean that you read, write and understand English well enough that you understand the right [sic] and penalties explained in this form and that you understand that a plea of guilty is a waiver and a giving up of those rights? Would that be an accurate statement of your understanding?
>
> [Dexter]:   Yes.

Tr. Ex. Vol., Defendant's Ex. B. The trial court further asked Dexter and the other defendants the following question:

> [Court]:   A plea of guilty is your admission from your own words that you are guilty of this crime and that you acknowledge as truth all the essential elements of the crime. Do you understand that?
>
> [Dexter]:   Yes.

*Id.*

Next, the court advised Dexter of the rights he waived by pleading guilty and the possible consequences of pleading guilty. The court also asked Dexter if he had any questions about the charges to which he was pleading guilty, and Dexter did not indicate that he had any. At that point, the court placed Dexter under oath and the following exchange occurred:

> [Court]:   Mr. Dexter you are pleading guilty in DF-48 to counts one and two, theft, both class D felonies. We have twenty-seven counts here, you'll have some restitution due; count one says on or about August three, ninety-nine, Tippecanoe County, State of Indiana, Thomas A. Dexter did knowingly or intentionally exert unauthorized control over the property of that of Meijer's merchandise which was sixty-nine dollars and seventy cents with the intent to deprive the other person of the value or use of that property. Are you guilty or not guilty of count one?
>
> [Dexter]:   Guilty.

5

> [Court]: Okay, count two information of theft; on or about August 3, nine-nine, Tippecanoe County, State of Indiana, Thomas A. Dexter did knowingly or intentionally exert unauthorized control over the property of another person, Meijer merchandise for sixty-five dollars and seventy-one cents with the intent to deprive the other person of the value or use of that property. Guilty or not guilty?
>
> [Dexter]: Guilty.

*Id.* Next, the prosecutor questioned Dexter under oath to further establish the factual basis for the crimes. The court accepted Dexter's guilty plea and sentenced him to a term of four years, all suspended to probation. The court further directed Dexter to serve one year of house arrest and to make restitution for the bad checks. When asked by the court, Dexter agreed that he was capable of working and could pay the amount of restitution. He did not appeal. Dexter later paid the required amount of restitution.

Dexter has served his sentence, but he is incarcerated on other convictions. One of Dexter's theft convictions was subsequently used to support a determination that he is a habitual offender.

In March 2012, Dexter, by counsel, filed a petition for post-conviction relief. The post-conviction court denied Dexter's petition after a hearing, determining: (1) laches barred Dexter's petition; and (2) Dexter's waiver of his right to counsel was knowing and voluntary. Dexter obtained new post-conviction counsel, and this appeal followed.

## DISCUSSION AND DECISION

A post-conviction proceeding is not a substitute for an appeal and does not provide a petitioner with a "super-appeal." *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006).

6

The post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Id.* When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Mauricio v. State*, 941 N.E.2d 497, 498 (Ind. 2011). To prevail on appeal, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *Id.*

## I. WAIVER OF COUNSEL

Dexter claims his waiver of his right to counsel at the guilty plea hearing was invalid because he believes the trial court had previously wrongfully denied his request for a public defender. The Sixth Amendment to the United States Constitution and article 1, section 13 of the Indiana Constitution both guarantee a criminal defendant the right to counsel. *See Jewell v. State*, 957 N.E.2d 625, 628, 633 (Ind. 2011). A defendant's right to counsel arises at any point during a criminal case in which the absence of counsel would erode the defendant's right to a fair trial. *Hopper v. State*, 957 N.E.2d 613, 616 (Ind. 2011). The entry of a guilty plea is a critical stage, and a voluntary and intelligent waiver of counsel is required for a defendant proceeding pro se. *Id.* Whether a waiver is voluntary and intelligent will depend upon an array of case-specific factors. *Id.* at 619. These factors include: (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. *Id.* at 618.

7

On the day of Dexter's guilty plea hearing, he read and signed an advisement that thoroughly described his rights and the consequences of his guilty plea, as set forth above. The advisement specifically explained Dexter's right to counsel and established that the signer was waiving the right to counsel with an understanding of the consequences of waiver and proceeding pro se. At the guilty plea hearing, the trial court questioned Dexter as to whether he had understood the advisement of rights and waiver of the right to counsel, and Dexter agreed that he had. The trial court further questioned Dexter to establish that he understood the array of rights he was waiving by pleading guilty. Dexter was twenty-two years of age when he pleaded guilty, and he had completed high school. His mother asserted at the post-conviction hearing that Dexter has attention-deficit and hyperactivity disorders, but there is no evidence that those conditions prevented him from understanding his rights and the consequences of his waiver of the right to counsel. This was Dexter's first criminal case, but he negotiated a plea agreement with the State that resulted in the dismissal of twenty-five other charges.

Dexter does not contend that the advisements he reviewed and signed were inadequate or that the trial court failed to adequately inquire into his decision to plead guilty. Instead, he says his waiver was invalid because the trial court had, in his opinion, wrongfully denied his request for counsel at two previous hearings, and he saw little point in making a third request at his guilty plea hearing.

We conclude the trial court did not deny Dexter's requests for counsel. At the initial hearing, the trial court indicated Dexter should make a good-faith effort to hire private counsel before asking for publicly-appointed counsel. At the May 5, 2000

8

hearing, Dexter conceded he had made no effort to hire a private attorney, so the trial court again directed him to seek private counsel before requesting a public defender. The court's requirement was reasonable under the circumstances because Dexter was employed. Indeed, Dexter did not dispute that he could have sought a higher-paying job or a second job, stating at the post-conviction hearing, "Since I did have a job I didn't think I needed two jobs to have an attorney or a public defender." PCR Tr. p. 32. Thus, he merely disagreed with the trial court's request to raise funds through other avenues before seeking a public defender. Finally, the advisements Dexter read and signed at the guilty plea hearing provided that he was still entitled to the assistance of counsel at public expense if he could prove a need for a public defender.

Dexter's claim that he saw no point in asking for a public defender on the basis of the trial court's past requirements to seek private counsel is a request to reweigh the evidence, which we may not do. There is sufficient evidence to sustain the post-conviction court's determination that Dexter validly waived his right to counsel. *See Hopper*, 957 N.E.2d at 621 (determining, based upon the terms of Hopper's plea agreement and his colloquy with the trial court at the guilty plea hearing, that Hopper's waiver of counsel was voluntary and intelligent).

## II. LACHES

Dexter argues the post-conviction court erred in determining that his petition was barred by the doctrine of laches. The post-conviction court determined, and we have affirmed, that Dexter's challenge to the validity of his waiver of the right to counsel must fail. Consequently, the question of laches is moot. *See Douglas v. State*, 510 N.E.2d

9

682, 683 (Ind. 1987) (determining that laches was "of no legal consequence" because Douglas's petition for post-conviction relief was without merit in any event).

### III. EFFECTIVENESS OF POST-CONVICTION HEARING COUNSEL

Dexter contends his post-conviction hearing counsel was ineffective because counsel should have presented another claim instead of, or in addition to, the claim counsel presented at the hearing.

There is no constitutional right to counsel in post-conviction proceedings under either the federal or state constitutions. *Hill v. State*, 960 N.E.2d 141, 145 (Ind. 2012). Accordingly, when considering the performance of post-conviction counsel, our Supreme Court has explicitly declined to apply the well-known test (known as the *Strickland* standard) for judging the performance of trial and direct appeal counsel. *Id.* Instead, courts judge post-conviction counsel by a lesser standard based on principles of due process of law. *Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989). Specifically, we must determine whether post-conviction counsel appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court. *Matheney v. State*, 834 N.E.2d 658, 663 (Ind. 2005).

In this case, an attorney (not Dexter's current post-conviction counsel) filed Dexter's petition for post-conviction relief and requested that Dexter be transported to the post-conviction hearing. That attorney also appeared at the post-conviction hearing and presented evidence and argument in support of Dexter's claim that his waiver of counsel was not knowing and intelligent.

10

Dexter asserts his post-conviction hearing counsel should have also argued that the State failed to establish a factual basis for the counts of theft at his guilty plea hearing, and counsel's failure to do so amounted to "abandonment." Appellant's Reply Br. p. 1. If we were discussing an allegation that an attorney had failed to raise a claim on direct appeal, we would apply the well-established standard requiring a claimant "to show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy." *Carter v. State*, 929 N.E.2d 1276, 1278 (Ind. 2010). However, post-conviction counsel is not evaluated under such a standard. An attorney's presentation of some claims instead of others at a post-conviction hearing does not amount to abandonment of the petitioner and does not deprive a petitioner of a procedurally fair hearing. *See Graves v. State*, 823 N.E.2d 1193, 1197 (Ind. 2005) (determining that post-conviction counsel did not abandon Graves because he appeared at the post-conviction hearing and presented evidence in support of Graves's claim); *cf. Taylor v. State*, 882 N.E.2d 777, 784 (Ind. Ct. App. 2008) (determining that Taylor was effectively abandoned by post-conviction counsel because counsel appeared at the post-conviction hearing but presented no evidence in support of Taylor's claims).

Furthermore, our review of the record reveals that a factual basis for Dexter's crimes was established at the guilty plea hearing. At the time of Dexter's crime, theft was defined as the act of knowingly or intentionally exerting unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use. Ind. Code § 35-43-4-2 (1985). Furthermore, pursuant to Indiana Code section

11

35-43-4-4(e) (1985), a person who has insufficient funds in an account and who draws a check on the account to pay for property may be inferred to have intended to deprive the owner of any property acquired by making, drawing, or uttering the check for payment of a part of the value of that property. Finally, in a prosecution for theft arising from a defendant's payment by check from an account with insufficient funds, it is a defense if the person pays the amount due, with protest fees, within ten days of receiving notice that the check has not been paid. Ind. Code § 35-43-4-5(b) (1985).

In this case, Dexter points out that at the guilty plea hearing he denied knowing that the checks would not clear the bank when he wrote them at Meijer, concluding that the State therefore failed to establish a factual basis as to all elements of the offenses. However, Dexter also pleaded guilty under oath to both charges after the trial court advised him that pleading guilty was an acknowledgement of the truth of each element of the crimes and read to him each element of the charges against him. Furthermore, Dexter admitted that he later found out that his checks did not clear the bank, but he did not pay back the amounts within ten days. This is sufficient information to establish a factual basis for both charges, and post-conviction hearing counsel cannot be faulted for pursuing a different claim.

Dexter argues this Court should grant him relief on his claim of ineffective assistance of post-conviction counsel because, if we determine that the claim is without merit, he will simply file another petition for post-conviction relief raising the same claim. He cites *Popplewell v. State*, 495 N.E.2d 189 (Ind. 1986), in support of his claim that he may file multiple petitions for post-conviction relief. In that case, Popplewell

12

filed a second petition for post-conviction relief after the first petition was denied. On appeal from the denial of the second petition, our Supreme Court determined that further proceedings were necessary. *Id.* at 192. However, after our Supreme Court issued *Popplewell*, it amended the Indiana Post-Conviction Rules to establish a new procedure for successive petitions. *See* Ind. Post-Conviction Rule 1(12). Once a petition for post-conviction relief has been litigated and the process is at an end, if a petitioner wants to file another petition, he or she must seek permission from the appropriate appellate court. *See Bellamy v. State*, 765 N.E.2d 520, 522 (Ind. 2002) (stating successive petitions for post-conviction relief must follow the process established by rule).

Dexter's claim of ineffective assistance of post-conviction counsel must fail.

CONCLUSION

For the reasons stated above, we affirm the judgment of the post-conviction court.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.