## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 14 2017, 9:07 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan J. Schueler
Ferguson Law
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Randy Tapp,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 14, 2017

Court of Appeals Case No.
60A04-1610-CR-2268

Appeal from the Owen Circuit Court

The Honorable Lori Thatcher Quillen, Judge

Trial Court Cause No.
60C01-1603-CM-86

**Baker, Judge.**

[1] Randy Tapp appeals his convictions for Class A Misdemeanor Resisting Law Enforcement[1] and Class B Misdemeanor Disorderly Conduct.[2] He raises a number of arguments on appeal, but we find one dispositive—whether he knowingly and voluntarily waived his right to be represented by an attorney. Finding that he did not, we reverse and remand for further proceedings.

## Facts

[2] On March 8, 2016, Gosport Town Marshal James Harrington and Gosport Police Officer Kemper Freeman went to Tapp's residence to talk to his son, Cody, regarding alleged ordinance violations for trash in the yard and a vehicle parked on the town's right of way. The officers spoke with Cody first, and he was angry and repeatedly refused to identify himself. Tapp came out of the house with a dog, which attacked Marshal Harrington. Tapp secured the dog and commented that when the police returned, he and Cody "would have guns on our side." Tr. p. 29, 58. Tapp and Cody were combative and told the officers they did not want them on the property.

[3] The next day, Marshal Harrington learned that a civil writ of attachment had been issued for Tapp, so the marshal went back to Tapp's residence to serve the body attachment. When Marshal Harrington and Officer Robbie Bean arrived at the residence, they again encountered Cody. Cody stated that his father was

---

[1] Ind. Code § 35-44.1-3-1 (2014).

[2] Ind. Code § 35-45-1-3(a)(1).

not home, and Marshal Harrington responded that he did not believe Cody because the marshal had heard conversation inside the house and had identified one of the voices as Tapp.

[4] Cody went inside the house and Tapp came to the door. Marshal Harrington began the process of arresting Tapp, asking him to turn around and place his hands behind his back. Tapp initially complied, but as the marshal gripped Tapp's right hand, Tapp placed his left hand on the storm door and tried to pull away. Cody reemerged from the house, and Marshal Harrington told him repeatedly to move away. When Cody ignored that command, Marshal Harrington pushed him away; a struggle then ensued between Marshal Harrington and Tapp. It was raining and Marshal Harrington's shoes were wet, and as he struggled to gain control of Tapp, he lost his footing and both fell to the ground. Tapp continued to resist being handcuffed and Cody continued to interfere, threatening Marshal Harrington. Marshal Harrington instructed Officer Bean to place Cody in custody; after that occurred, the marshal was finally able to place Tapp in handcuffs. Tapp was combative throughout the whole encounter.

[5] On March 10, 2016, the State charged Tapp with Class A misdemeanor resisting law enforcement and Class B misdemeanor disorderly conduct. At the initial hearing, Tapp indicated that he would hire his own attorney. He failed to do so, and on May 5, 2016, the trial court appointed a public defender for Tapp. That attorney filed a motion to withdraw five days later, which the trial court granted; on the same day, the trial court appointed a second public

defender to represent Tapp. On May 17, 2016, Tapp declined the second public defender and again indicated a desire to hire his own attorney. The second public defender withdrew two days later.

[6] On August 25, 2016, the trial court reconvened, and Tapp appeared without counsel. The trial court ultimately granted Tapp's request to proceed pro se. On September 6, 2016, a bench trial took place, after which the trial court found Tapp guilty as charged. The trial court sentenced Tapp to 365 days, suspended to probation, for resisting law enforcement, and to 180 days, suspended to probation, for disorderly conduct. Tapp now appeals.

## Discussion and Decision

[7] Tapp raises a number of arguments on appeal, but we find one dispositive. He argues that he did not knowingly and voluntarily waive his right to counsel. A defendant who wishes to waive the constitutional right to counsel must do so knowingly, intelligently, and voluntarily. *Hopper v. State*, 957 N.E.2d 613, 617 (Ind. 2011). Therefore, a defendant who wishes to proceed pro se should be made aware of the dangers and disadvantages of self-representation such that the record will show that he "knows what he is doing and his choice is made with eyes open." *Id.* Our Supreme Court has held that courts considering whether a waiver of counsel was knowing and intelligent must evaluate (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the

defendant, and (4) the context of the defendant's decision to proceed pro se. *Id.* The trial court is in the best position to assess whether the defendant has made a knowing and intelligent waiver, and we will affirm if the trial court "has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion." *Drake v. State*, 895 N.E.2d 389, 393 (Ind. Ct. App. 2008).

[8] At a May 17, 2016, hearing, Tapp indicated that he wanted his second public defender to withdraw. He stated that he intended to hire his own attorney and the trial court agreed, cautioning that it would not appoint further public defenders for Tapp and stating that if Tapp did not have an attorney by subsequent hearing dates, "you will be proceeding on your own and I would caution you against that because obviously an attorney needs to do some depositions in this case and a [sic] discovery in this case. You know, and get some witnesses on board for—for all parties involved." Tr. p. 6-7.

[9] At an August 25, 2016, pretrial hearing, Tapp appeared pro se. At that hearing, the following discussion occurred:

> Court:. . . Mr. Tapp, are you still wanting to proceed on your own for representation purposes?
>
> Tapp: I can't afford not to and I won't take that public defender that wants me to plead guilty . . . .
>
> ***
>
> Court: I—I'm willing to appoint you a public defender so that's where we've always been at.

Tapp: No, ma'am.

Court: So, if you want to hire your own attorney, . . .

*** 

Tapp: I can't afford to and I—I can't afford to and I won't take a
State representative that wants me to plead guilty to this.

***

Court: . . . I would think if your attorney tells you to plead and
you don't, you have every right to go to trial and they still
have to take it to trial. So, if you want me to appoint
somebody that's going to—

***

Tapp: I'm just going to relax and go upon the Lord's word.

Court: Okay.

Tapp: He proceeds me. And, I—

Court: I—I agree. I'm a big—

Tapp: —I'm pretty sure he'll represent me just well.

Court: I—I follow Jesus Christ as well. . . .

***

Court: If you want me to appoint somebody that will take it to the trial regardless, I'm willing to do that. . . .

\*\*\*

Tapp: No, Ma'am.

\*\*\*

Tapp: So, my God says he is my counselor in the Courtroom, so I'm going to—I'm going to trust him upon his word.

\*\*\*

Court: Well – well, Mr. Tapp, if you change your mind at any time you want me to appoint someone, I will and certainly I – I want a trial on this. I want you to be able to come before me. So, I – and, if you don't – if you don't want to plead, I don't want you to plead. And, I want to hear the evidence on it and an attorney has ethics and standards that they must follow, they may think that it's a better, wise decision based upon what they view for you to plead. I don't know. But, the reality is [] they still have a duty and obligation to present the evidence, object when certain evidence comes in. If you give them evidence to present, provided it's truthful evidence and it doesn't violate any of their ethical[] rules, they still have the obligation to present that. So, if you change your mind, you put something in writing and I will appoint someone for you. If you hire your own attorney, you're entitled to do that. But, you're also entitled to represent yourself. And, we – we've done this three or four times. So, I'm proceeding with you representing yourself at this point in time unless you put something in writing telling me differently. Okay?

Tapp: Yes, Ma'am. We're good. Thank you.

Tr. p. 16-19.[3]

[10] Aside from the trial court's brief statement at the May 17 hearing—when a request to proceed pro se was not even on the table—the trial court never once advised Tapp about the dangers and disadvantages of self-representation. Similarly, the trial court did not inquire into Tapp's background and education, so we have no way of evaluating this factor. And as for the context of the decision to proceed pro se, Tapp did not want to be represented by any attorney who advised him to plead guilty and he believed that he would be sufficiently represented by God during his trial. We do not find this context helpful to a ruling granting his request to represent himself.

[11] We are mindful of the frustration that the trial court must have felt as Tapp refused representation by two public defenders and repeatedly voiced an intention to retain private counsel but failed to do so. We are likewise mindful that the trial court could not permit Tapp to postpone the trial indefinitely with promises of private counsel on the horizon. But the right to representation by an attorney is so sacrosanct, and so crucial to the administration of justice, that certain procedures—including, most importantly, a pointed advisement regarding the dangers and disadvantages of self-representation—simply must be

---

[3] At that hearing, Tapp later requested to take a polygraph examination and stipulated to its admission into evidence at trial regardless of the results.

followed before a defendant is permitted to proceed pro se. In this case, those procedures were not followed. As a result, the trial court erred by concluding that Tapp had knowingly and voluntarily waived his right to counsel. We reverse and remand for a new trial.

[12] The judgment of the trial court is reversed and remanded for further proceedings.

Barnes, J., and Crone, J., concur.