

FILED
May 17 2012, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY HAMMERLUND, | ) | |
| | ) | |
| Appellant–Cross-Appellee–Defendant, | ) | |
| | ) | |
| vs. | ) | No. 33A05-1110-CR-562 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee–Cross-Appellant–Plaintiff. | ) | |

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Bob A. Witham, Judge
Cause No. 33D02-1005-FD-130

**May 17, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant–Cross-Appellee–Defendant Timothy Hammerlund appeals following the trial court's revocation of his probation, contending that his waiver of counsel was not knowing and voluntary. We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 2, 2010, Hammerlund agreed to plead guilty to Class D felony possession of a controlled substance in exchange for the dismissal of three other charges. That day, the trial court sentenced Hammerlund to one and one-half years of incarceration, all suspended and with one year and forty-six days suspended to probation. On August 11, 2011, the State filed a Second Amended Verified Petition to Revoke Suspended Sentence, on the basis that Hammerlund had failed a drug screen.

On September 19, 2011, at the initial hearing on the petition to revoke, the following exchange took place:

> THE COURT: You do have the right to counsel to represent you. If you want an attorney, but cannot afford one, I'll consider appointment of counsel. You cannot be compelled to make any statement or to testify against yourself at the hearing, but anything you say could be used against you. You have a right to have a hearing on the allegations made in the Petition to Revoke. At that hearing, the State would have to prove the allegations by a preponderance of the evidence from evidence presented in open court at a final hearing. You would also have the right to confront the witnesses against you and to see, hear and cross examine those witnesses. You'd also have the right to call witnesses in your own behalf and I would assist you in that matter by issuing subpoenas at no cost to you. If the Court revokes your probation after conducting a final hearing, you would be entitled to appeal the Court's decision. If you admit the allegations made in the Petition to Revoke today, you would give up and waive each of these rights. If the Court finds that you have violated a condition of your probation, the Court could continue you on probation, modify the conditions of that probation or order the revocation of your suspended sentence. If the Court orders the revocation of your suspended

2

sentence, you would be entitled to credit for any time served on these charges. Do you understand these rights?

MR. HAMMERLUND:     Yes, Your Honor.

THE COURT:     Any questions on any of these rights?

MR. HAMMERLUND:     No, Your Honor.

THE COURT:     The Second Amended Petition, in pertinent part state, the matters set forth in the original Petition and prior petitions are incorporated by reference. This alleges you further violated the terms and conditions o[f] probation in the following manner: on July 27, 2011, you submitted to a random urinalysis through the Probation Department. The results of that screen were return[ed] by AIT Laboratories. They indicated positive for the presence of Benzodiazepine, specifically Alprazolam, and also the Court notes, or Probation noted you have had a prior hearing set on violation for today's date at 10:30 a.m. That's the allegation that is contained in this petition. Do you understand the allegation?

MR. HAMMERLUND:     Yes, Your Honor.

THE COURT:     Do you have any questions on that allegation?

MR. HAMMERLUND:     I have spoken with the probation officer and she asked me and I was honest with her. The reason why I had that, I'm not on my prescription Paxil. I had an interview with the two, two district attorney, or the two people, the prosecutors in Madison County for the capital case, the murder of Steven Rogers and I just, I don't have the (Inaudible-stamping) with the depression. I just don't have the coping skills. I haven't been able to start the [intensive outpatient treatment].

THE COURT:     So, if I understand what you're saying is, when you met with Officer Klenke, you admitted that you took some type of a Benzodiazepine that you weren't prescribed. That's what you're telling me?

MR. HAMMERLUND:     I wasn't prescribed it, but when she asked me if I was to take a drug screen, what would the outcome be and I told her and then I wanted to explain to her the reason why, because I didn't want to have any anxiety attacks and I have really bad anxiety attacks in a meeting with Prosecutors about what happened to me and…

\*       \*       \*       \*

THE COURT:     All right. So, from what you're saying, are you telling me that you are admitting to violating the terms and conditions of probation by testing positive for that substance?

MR. HAMMERLUND:     Yes, Your Honor.

THE COURT:     Has anyone threatened or forced you to admit to that?

MR. HAMMERLUND:     No, Your Honor.

3

THE COURT: Any promises been made about what will happen if you admit?

MR. HAMMERLUND: No, Your Honor.

THE COURT: You understand that by admitting you're admitting the truth that you did test positive for that substance? Is that correct?

MR. HAMMERLUND: Yes, Your Honor.

THE COURT: And you also understand that if you admit, you're giving up and waiving all those rights I went through earlier. You understand that?

MR. HAMMERLUND: Yes, Your Honor.

Tr. pp. 40-43.

The trial court found that Hammerlund had violated the terms of his probation and ordered that one year of his previously-suspended sentence be served.

## DISCUSSION AND DECISION[1]

### Whether Hammerlund's Waiver of Counsel was Knowing and Voluntary

Hammerlund contends that the waiver of counsel at his probation revocation hearing was not knowing and voluntary because the trial court did not question him regarding whether he was aware of the nature, extent, and importance of the right to counsel or the pitfalls of waiving it.

> Probation is a favor granted by the State, not a right to which a defendant is entitled. *Cooper v. State*, 900 N.E.2d 64, 66 (Ind. Ct. App. 2009). A probationer faced with a petition to revoke his probation is not entitled to the full panoply of rights he enjoyed before the conviction. *Id.* For instance, the rules of evidence do not apply in a revocation proceeding, and the State need prove an alleged violation of probation by only a preponderance of the evidence. *Id.*
> A defendant is entitled to certain due process protections before the revocation of his probation. *Id.* One of these protections is the right to

---

[1] The State cross-appeals, arguing that Hammerlund should not be able to challenge the revocation of his probation on direct appeal, having admitted to violating its terms. In the interests of deciding cases on the narrowest possible grounds and of avoiding additional and unnecessary litigation in this case, we leave this broader question for another day.

4

counsel. *Id.*; *see also* Ind. Code § 35-38-2-3(e) ("The person [in a revocation proceeding] is entitled to confrontation, cross-examination, and representation by counsel."). When a defendant proceeds without the benefit of counsel, the record must reflect that he knowingly, intelligently, and voluntarily waived his right to counsel. *Cooper v. State*, 900 N.E.2d at 66. That is, the trial court must determine the defendant's competency to represent himself and establish a record of the waiver. *Id.* "There are no magic words a judge must utter to ensure a defendant adequately appreciates the nature of the situation." *Kubsch v. State*, 866 N.E.2d 726, 736 (Ind. 2007), *reh'g denied*. "Rather, determining if a defendant's waiver was knowing and intelligent depends on the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Id.* (quotations omitted).

Moreover, when a probationer proceeds pro se and chooses to admit rather than to challenge his alleged probation violation, his knowing, intelligent, and voluntary waiver of counsel may be established even if the record does not show that he was warned of the pitfalls of self-representation. *Greer v. State*, 690 N.E.2d 1214, 1217 (Ind. Ct. App. 1998), *trans. denied*, *abrogated by Hopper v. State*, 934 N.E.2d 1086 (Ind. 2010), *reh'g granted*.

We review de novo a trial court's finding that a defendant waived his right to counsel. *Cooper*, 900 N.E.2d at 67.

*Butler v. State*, 951 N.E.2d 255, 259-60 (Ind. Ct. App. 2011).

In *Greer*, we stated the following regarding waiving the right to counsel in cases where a probationer admits to violating the terms of his probation:

We believe that a probationer who chooses to admit his probation violation places himself in a situation similar to that of a defendant who chooses to plead guilty to criminal charges. Neither person is in danger of "conviction" at the hands of the State. It is unnecessary to warn such a person of the pitfalls of self-representation, for those pitfalls exist only when he is confronted with prosecutorial activity which is designed to establish his culpability.

*Greer*, 690 N.E.2d at 1217.

5

This is an appropriate place to say a few words regarding the precedential effect of *Greer*. It is true that the original opinion in *Hopper v. State*, 934 N.E.2d 1086, 1088 (Ind. 2010) *on reh'g*, 957 N.E.2d 613 (Ind. 2011) ("*Hopper I*"), arguably abrogated *Greer* by requiring, without carving out exceptions for guilty pleas or admissions to allegations of probation violations, that

> in the future a defendant expressing a desire to proceed without counsel is to be advised of the dangers of going to trial … and also be informed that an attorney is usually more experienced in plea negotiations and better able to identify and evaluate any potential defenses and evidentiary or procedural problems in the prosecution's case.

*Hopper I*, 934 N.E.2d at 1088. On rehearing, however, the Indiana Supreme Court adopted a more flexible, case-specific approach to such matters and cited *Greer* and other cases with approval, saying that "[t]hese cases and others like them may serve as helpful comparative guideposts to trial and appellate courts." *Hopper v. State*, 957 N.E.2d 613, 619 (Ind. 2011) ("*Hopper II*"). Under the circumstances, it seems clear that *Greer*, while perhaps once abrogated, is again good law and may serve as guidance to trial courts and practitioners.

Returning to the facts of the instant case, the trial court advised Hammerlund that he had the right to be represented by an attorney, that he might have an attorney appointed if he could not afford one, and of the potential consequences of admitting the allegations leveled against him. Hammerlund indicated that he understood his rights and that he had no questions regarding them. After Hammerlund admitted to violating the terms of his probation, the trial court again asked him if he understood that he was waiving the rights it had advised him of earlier, and Hammerlund indicated that he did.

6

These facts relating to Hammerlund's waiver of counsel are essentially identical to those in *Greer*, in which we concluded that Greer's waiver of counsel was valid. "At his initial hearing, Greer was advised of many things, including the following: that he had the right to be represented by an attorney; that an attorney might be appointed to represent him; and that certain consequences would or might result if he admitted the alleged violation of probation." *Id*. "This record, which also indicates that Greer understood the trial judge's advisements, establishes Greer's knowing, intelligent, and voluntary waiver of counsel." *Id*. Hammerlund was given essentially the same advisements cited by the *Greer* court and indicated on the record that he understood them. We conclude, therefore, that the record here establishes Hammerlund's knowing, intelligent, and voluntary waiver of counsel.

Moreover, we note that Hammerlund does not contend, much less establish, that he suffered any prejudice whatsoever. The Indiana Supreme Court recently emphasized the importance of this factor in the totality-of-the-circumstances approach that it has adopted:

> Hopper himself may be the best illustration of why the totality of the circumstances approach serves better than the per se rule. He claims only a lack of an advisement. He does not articulate any negative impact or particularized prejudice. He makes no argument of injustice or innocence. He certainly never says, "I didn't do it." … Hopper never offers evidence that he would have received a better deal with advice of counsel or that he would have accepted counsel if the judge had told him that lawyers were so much better at plea bargaining.

*Hopper II*, 957 N.E.2d at 623.

Like the defendant in *Hopper II*, Hammerlund simply claims he was inadequately

7

advised without saying how it harmed him. Hammerlund does not claim that the State's evidence was weak, he would have received a better deal had he been represented, or he would have accepted counsel had he been differently advised. Taken as a whole, the record fails to establish that Hammerlund's waiver of counsel was anything other than knowing, intelligent, and voluntary.

The judgment of the trial court is affirmed.

VAIDIK, J., and CRONE, J., concur.