Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jan 22 2015, 6:17 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHAWN J. RIGGLE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A04-1407-CR-341 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable David R. Bolk, Judge
Cause No. 84D03-1310-FD-3255

**January 22, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Shawn J. Riggle appeals the revocation of his placement in community corrections. Riggle raises one issue which we revise and restate as whether the trial court abused its discretion in revoking his placement in community corrections and ordering that he serve the remaining portion of his sentence in the Department of Correction ("DOC"). The State argues, in part, that this appeal should be dismissed as moot. We affirm.

FACTS AND PROCEDURAL HISTORY

In December 2013, the State charged Riggle in an amended information with: Count I, burglary as a class C felony; Count II, theft as a class D felony; Count III, auto theft as a class D felony; Count IV, theft as a class D felony; and Count V, possession of a controlled substance as a class D felony. The State alleged that Riggle was an habitual offender.

On March 27, 2014, Riggle pled guilty to a lesser included offense of residential entry as a class D felony under Count I, two counts of theft as class D felonies under Counts II and IV, and being an habitual offender. The court sentenced Riggle to three years for his convictions under Counts I, II, and IV, enhanced the sentence for Count I by four years based upon Riggle's status as an habitual offender, and ordered that the sentences be served concurrently. The court further ordered that the first two years of the sentence be executed as a direct commitment to the Vigo County Home Detention Program under the supervision of Vigo County Community Corrections, and that Riggle have ten days to pay the initial fee to Vigo County Community Corrections and to begin serving his sentence. The order states that Riggle "shall not be released from the Vigo County Jail until such time as he has paid the initial fee and made arrangements to begin immediately serving his sentence."

2

Appellant's Appendix at 54. The court ordered the remaining five years of the sentence suspended.

On June 20, 2014, the State filed a petition to revoke direct commitment alleging that Riggle had failed to begin service of his direct commitment. On June 23, 2014, the court held a hearing. At the beginning, the court informed Riggle of the allegation and that "[i]f [he was] found to have violated the terms of [his] direct commitment, the issue before the Court is where [he would] serve that sentence . . . ." Transcript at 4. Riggle indicated that he understood the allegation and that he understood what was "at stake." Id. The following exchange then occurred:

COURT:      You have a right to have a lawyer. If you'd like to have one, can't afford one, one will be appointed for you. Mr. Riggle, do you wish to have a lawyer represent you?

[Riggle]:   Uh, no. I'm fine.

COURT:      You're going to proceed without a lawyer?

[Riggle]:   Yeah.

COURT:      Okay. And you understand that you have a right to have one?

[Riggle]:   Yes.

COURT:      One will be appointed to you at no expense if you wish to have one –

[Riggle]:   Yes.

COURT:      - and can't afford one.

[Riggle]:   Yes.

3

COURT: Mr. Riggle um, then I'm gonna show that you've made a knowing and voluntary, intelligent waiver of your right to counsel. I'm gonna ask you Mr. Riggle if you admit or deny that you've violated the terms of your direct commitment?

[Riggle]: I admit.

Id. at 4-5.

When asked what he wished to tell the court, Riggle stated that he did not have a "place in Vigo County to do home detention," that when "it got changed from pre-trial home detention to uh, well it was G.P.S., to regular home detention" he "had to come up with money again, which [he] didn't have the money," that he "really hate[d] to miss these last three (3) months of summer," that "there's so much work out there, and about eight [sic] (80) to ninety percent (90%) of my employment comes from these three (3) summer months," that he had two dependents, and that it would be "hard for [him] not to be there to help support them financially." Id. at 7-8. When asked by the court if he paid the initial fee, Riggle stated:

> I don't - no, I haven't. Because it's got changed on me twice. It was pre-trial, so I didn't have to pay anything, and then uh, I didn't have a home in Vigo County. They made me do it in Vigo County. My home's in Clay County, so no, I didn't get it, I didn't get it paid, but then when I come up with the money, then it was, was no longer G.P.S., it was uh, I had to have a home. It just, it's been changed on me about three (3) times. No I haven't paid it, but I do have access to the money. I asked for the Courts to grant me an additional twenty (20) days until the Third (3rd) of August to get that money.

Id. at 9. The following exchange then occurred:

COURT: But as you sit here today –

4

[Riggle]: – and that motion was denied.

COURT: I mean, as the Court indicated in its response to your pro se request –

[Riggle]: Right.

COURT: – you had asked – I mean, back in March the Court tried to get you into – and you've not been able to do it. We're three (3) months down the line, we're under a Federal lawsuit, there are two hundred and seventy-six (276) people in the Vigo County Jail –

[Riggle]: I know. I'm –

COURT: – we're over our cap, and the Court's received several letters from you in the past saying you're gonna be able to get the money, and you haven't. I mean it's - this has, this sentence has to be served somewhere, and in three (3) months you haven't been able to come up with the funds to begin to serve it somewhere, and the Court's simply unwilling to give you additional time in the hope that you can come up with money at some future point. Um, so I, I don't think the Court really has any choice. I'm gonna order the balance of the sentence be served at the Indiana Department of Corrections. Your probation time, I'm not, I'm not revoking any of your probation. You don't have the money, you don't have the money.

Id. at 9-11. The court revoked Riggle's direct commitment and ordered that the balance of the executed portion of the sentence be executed at the DOC.

DISCUSSION

We initially address the State's argument that we should dismiss the appeal and then turn to whether the trial court properly revoked Riggle's placement in community corrections.

5

A.      Mootness

The State argues that this appeal should be dismissed as moot because the issue is where Riggle was to serve his two-year executed sentence and Riggle was released from the DOC for this two-year executed sentence on October 16, 2014, and began serving his five-year suspended sentence at that time.  The State asserts that Riggle's five-year suspended sentence is not affected by or subject to this appeal.  In his reply brief, Riggle argues that this appeal is not moot because he still has a legally cognizable interest in the outcome because he now has a direct placement revocation on his record and this case falls under the public interest exception to the mootness doctrine.

In Smith v. State, 971 N.E.2d 86, 87 (Ind. 2012), the defendant argued that the introduction of certain hearsay evidence at the hearing revoking his community corrections placement violated his due process right to confrontation.  The State filed a motion to dismiss alleging that the appeal was moot.  971 N.E.2d at 88-89.  The Court observed that the defendant conceded that he had served his sentence and held that the defendant's argument related to the application of Ind. Code § 35-38-2.6-6, in which he claimed that he was entitled to home-detention good time credit toward his sentence, was in fact moot. Id. at 89.  The Court then held:

> Nevertheless, we will consider Smith's argument that his due process right to confrontation was violated by the admission of State's Exhibit 1. As mentioned above, the trial court's finding that Smith had violated the terms of his community-corrections placement was based on this exhibit.  And a finding that Smith violated the terms of his community-corrections placement may have negative collateral consequences. See Ind. Code § 35-38-1-7.1(a)(6) (2008) (violation of community-corrections placement may

6

be a statutory aggravating factor in the event Smith is sentenced for committing another crime); see also Hamed v. State, 852 N.E.2d 619, 621-22 (Ind. Ct. App. 2006) (addressing merits of claim because of possible negative collateral consequences).

Id. To the extent that Riggle challenges his sentence, we find that issue moot. However, with respect to his argument that the trial court improperly revoked his placement, we will address the merits of his argument. See id.

B.      Revocation

Generally, a defendant is not entitled to serve a sentence in either probation or a community corrections program. Monroe v. State, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). "Rather, placement in either is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.'" Id. (quoting Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999), reh'g denied). For the purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program such as home detention the same as we do a probation revocation hearing. Id. (citing Cox, 706 N.E.2d at 549). The State needs to prove the alleged violations by a preponderance of the evidence. Id. Probation revocation is a two-step process. Woods v. State, 892 N.E.2d 637, 640 (Ind. 2008). First, the court must make a factual determination that a violation of a condition of probation actually occurred. Id. If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. Id. We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses. Monroe, 899 N.E.2d at 691. If there is substantial evidence

7

of probative value to support the trial court's conclusion that a defendant has violated any terms of home detention, we will affirm its decision to revoke home detention. Id. The violation of a single condition of home detention is sufficient to revoke home detention. See Wilson v. State, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999).

1. Right to Counsel

Riggle argues that his waiver of counsel was not valid because he was never advised of the potential pitfalls of self-representation. The State argues that this was not a complex proceeding that required the nuance of counsel or the presentation of evidence. The State points out that Riggle had been represented by counsel at sentencing and was well aware of his right to counsel and points to his extensive criminal history.

Persons facing revocation of their community-corrections placements are entitled to certain due process rights at their revocation hearings, including a right to counsel. See Cox, 706 N.E.2d at 550 (holding that a defendant in a community corrections program is entitled to representation by counsel); see also Ind. Code § 35-38-2-3(f) ("The person [alleged to have violated probation] is entitled to . . . representation by counsel.").

"The law is well settled that whenever a defendant proceeds without the benefit of counsel, the record must reflect that the right to counsel was voluntarily, knowingly, and intelligently waived." Bumbalough v. State, 873 N.E.2d 1099, 1102 (Ind. Ct. App. 2007). That is, the trial court must determine the defendant's competency to represent himself and establish a record of the waiver. Id. "The record must show that the defendant was made aware of the 'nature, extent and importance' of the right to counsel and to the necessary

8

consequences of waiving such a right. Id. (quoting Bell v. State, 695 N.E.2d 997, 999 (Ind. Ct. App. 1998)).

"There is no particular formula or script that must be read to the defendant. The information that must be given 'will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" Hopper v. State, 957 N.E.2d 613, 618 (Ind. 2011) (quoting Iowa v. Tovar, 541 U.S. 77, 88 (2004)). Other factors to consider are "(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se." Id. However, both the United States Supreme Court and the Indiana Supreme Court "have deliberately eschewed any attempt to formulate a rigid list of required warnings, talismanic language, or formulaic checklist." Id. at 619. Important to our appellate review is consideration of "what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage." Id. (quoting Patterson v. Illinois, 487 U.S. 285, 298 (1988)). We review *de novo* a trial court's finding that a defendant waived his right to counsel. Cooper v. State, 900 N.E.2d 64, 67 (Ind. Ct. App. 2009).

In Greer v. State, we stated the following regarding waiving the right to counsel in cases where a probationer admits to violating the terms of his probation:

We believe that a probationer who chooses to admit his probation violation places himself in a situation similar to that of a defendant who chooses to plead guilty to criminal charges. Neither person is in danger of "conviction" at the hands of the State. It is unnecessary to warn such a person of the pitfalls of self-representation, for those pitfalls exist only when he is confronted with prosecutorial activity which is designed to establish his culpability. It is therefore clear that, when a probationer who proceeds *pro se* chooses to admit rather than to challenge his alleged probation violation, his knowing, intelligent, and voluntary waiver of counsel may be established even if the record does not show that he was warned of the pitfalls of self-representation.

690 N.E.2d 1214, 1217 (Ind. Ct. App. 1998), trans. denied.[1]

The court informed Riggle that if he was found to have violated the terms of his direct commitment the issue would be where he would serve his sentence, that he had the right to a lawyer, and that one would be appointed at no expense if he could not afford one.

---

[1] In Hammerlund v. State, this court commented on the precedential effect of Greer by stating:

> It is true that the original opinion in Hopper v. State, 934 N.E.2d 1086, 1088 (Ind. 2010) on reh'g, 957 N.E.2d 613 (Ind. 2011) ("Hopper I"), arguably abrogated Greer by requiring, without carving out exceptions for guilty pleas or admissions to allegations of probation violations, that
>
> > in the future a defendant expressing a desire to proceed without counsel is to be advised of the dangers of going to trial . . . and also be informed that an attorney is usually more experienced in plea negotiations and better able to identify and evaluate any potential defenses and evidentiary or procedural problems in the prosecution's case.
>
> Hopper I, 934 N.E.2d at 1088. On rehearing, however, the Indiana Supreme Court adopted a more flexible, case-specific approach to such matters and cited Greer and other cases with approval, saying that "[t]hese cases and others like them may serve as helpful comparative guideposts to trial and appellate courts." Hopper v. State, 957 N.E.2d 613, 619 (Ind. 2011) ("Hopper II"). Under the circumstances, it seems clear that Greer, while perhaps once abrogated, is again good law and may serve as guidance to trial courts and practitioners.

967 N.E.2d 525, 528 (Ind. Ct. App. 2012). We also observe that the Court in Hopper II stated that when a general rehearing is granted, the case stands before the court as if it had never been decided, and that the Court treated the rehearing as a general rehearing. See Hopper II, 957 N.E.2d at 616.

10

The court also asked Riggle if he understood the allegation, what was at stake, and his right to have an attorney. Riggle stated that he understood the allegation and what was at stake and that he was going to proceed without an attorney. Riggle's responses to the court's questions were direct and unequivocal. We observe that the presentence investigation report ("PSI") filed in the underlying cause number on April 23, 2014, states that Riggle obtained his GED, reported no history of mental illness, had four adjudications as a juvenile, had fourteen prior misdemeanor convictions and ten prior felony convictions as an adult, and had his probation revoked eleven times. The record shows that the trial court advised Riggle of his right to counsel and that Riggle unequivocally waived that right. Under the circumstances, we conclude that Riggle was adequately advised of his right to counsel and that he knowingly, intelligently, and voluntarily waived that right. See Butler v. State, 951 N.E.2d 255, 261-262 (Ind. Ct. App. 2011) (holding that the defendant was adequately advised of his right to counsel and knowingly, intelligently, and voluntarily waived his right).

### 2. Ability to Pay

Riggle argues that his community corrections placement was impermissibly revoked due to his temporary inability to pay. The State concedes that Riggle is correct that revocation based upon the failure to pay is improper where a probationer had no ability to pay, but argues that that is not what happened here. The State argues that "[t]he simple fact is that [Riggle] never enrolled in the home detention program to begin with, and the trial court did not 'revoke' that placement," the trial court modified the placement for the

11

executed two-year sentence because Riggle failed to enroll in the program, and Riggle "was required to pay an initiation fee to enroll, and he failed to do so." Appellee's Brief at 14. The State asserts that Riggle could not meet the basic requirements of that program, including the requirement that he have a home in Vigo County. The State also argues that Riggle had three months within which to secure the funds to enroll in the program and he presented no evidence at the hearing that he had an inability to pay the initiation fee to enroll in the program, and in fact said that he did have access to the money.

Our system's practice of revoking an offender's probation or community corrections placement due to the offender's failure to pay fees creates an unavoidable dilemma. Offenders should not be allowed to skirt the consequences of their actions, and those consequences at times include the payment of fees and fines. But we are loathe to abide a system that affords different justice to the wealthy and the impoverished. A difficult line must therefore be drawn between enforcing financial conditions of a sentence and allowing impecunious offenders to support themselves and their dependents. We strike a balance among these concerns by requiring that an offender's 'ability to pay' be considered before imposing imprisonment as a sanction for failure to comply with financial conditions associated with a sentence. In Runyon v. State, the Indiana Supreme Court held that if the violation of a probation condition involves a financial obligation, then the probationer must be shown to have recklessly, knowingly, or intentionally failed to pay. 939 N.E.2d 613, 616 (Ind. 2010). See also Ind. Code § 35-38-2-3(g) ("Probation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the

12

person unless the person recklessly, knowingly, or intentionally fails to pay."). The Court determined "[a]s to the fact of violation, the statute expressly imposes the burden of proof upon the State. But with respect to the ability to pay, the burden of proof is not explicitly designated." Id. The Court held, "it is the State's burden to prove both the violation and the requisite state of mind in order to obtain a probation revocation." Id. With respect to the ability to pay, the Court held that it is the defendant probationer's burden "to show facts related to an inability to pay and indicating sufficient bona fide efforts to pay so as to persuade the trial court that further imprisonment should not be ordered." Id. at 617 (citing Woods v. State, 892 N.E.2d at 641). If the offender is able to make this showing, then the trial court "must consider alternative measures of punishment other than imprisonment." Id. at 616 (quoting Bearden v. Georgia, 461 U.S. 660, 672, 103 S. Ct. 2064, 2073 (1983)).

The trial court revoked Riggle's community correction placement while also saying to Riggle: "You don't have the money, you don't have the money." Transcript at 11. Standing alone, this would appear to be a clear finding that Riggle had an inability to pay the fees at issue. However, a closer look at the record reveals that Riggle made no effort whatsoever to show facts related to an inability to pay. Upon questioning by the court as to whether he paid the fees, Riggle testified at one point: "No I haven't paid it, but I do have access to the money." Transcript at 9.

After reviewing this record, it is not difficult to imagine that Riggle may have had at least a temporary inability to pay the fee at issue. If that is true, it is certainly unfortunate. But the fact is that Riggle completely failed in his burden to present any evidence or

13

argument to the trial court regarding an inability to pay. Consequently, his argument on appeal is too speculative to entitle him to a reversal. Under the circumstances, we cannot say that Riggle demonstrated an inability to pay or sufficient bona fide efforts to pay or that the court abused its discretion in revoking his placement in community corrections.

We also observe that Riggle testified that he did not have a home in Vigo County in which to do home detention, and it seems that Riggle's residence was located in Clay County, which borders Vigo County. The record indicates that both Riggle and the trial court may have been under the impression that Riggle needed to live in Vigo County in order to serve his home detention sentence, and it is conceivable that Riggle's lack of payment was a result of his belief that he must also pay for a place to live in Vigo County. Ind. Code § 35-38-2.5-5.5(b) provides:

> If the offender [sentenced to home detention] resides in a county that is adjacent to the county in which the sentencing court is located, the supervision of the offender may be conducted by either the:
>
> (1)    probation department; or
>
> (2)    community corrections program;
>
> located in the county in which the sentencing court is located.

Had Riggle known that his sentence could be supervised by Vigo County Community Corrections without requiring him to move from Clay County to Vigo County, it is possible that Riggle's revocation could have been avoided. Although this is of no particular help to Riggle, the trial court's awareness of this option may prevent any troublesome confusion in the future.

14

CONCLUSION

For the foregoing reasons, we affirm the trial court's revocation of Riggle's placement in community corrections.

Affirmed.

BAILEY, J., and ROBB, J., concur.