## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 29 2018, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy Davis, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 29, 2018 <br><br> Court of Appeals Case No. 57A03-1709-CR-2124 <br><br> Appeal from the Noble Circuit Court <br><br> The Honorable Michael J. Kramer, Judge <br><br> Trial Court Cause No. 57C01-0806-FC-29 |

**Robb, Judge.**

# Case Summary and Issue

[1]     Timothy Davis appeals following the revocation of his probation. He raises one issue for our review which we restate as whether he knowingly, voluntarily, and intelligently waived his right to counsel before admitting to violating his probation. Concluding that, under the totality of the circumstances, Davis validly waived his right to counsel for his probation revocation hearing, we affirm.

# Facts and Procedural History

[2]     On October 16, 2008, Davis pleaded guilty to nonsupport of a dependent child as a Class C felony. On November 13, 2008, the trial court sentenced Davis to eight years with the Indiana Department of Correction ("DOC"). The trial court suspended all of Davis' sentence to probation.

[3]     The State filed its first notice of probation violation on October 20, 2009, alleging multiple violations, including that Davis had tested positive for alcohol, had provided a dilute urine specimen on two separate occasions, had failed to report for a scheduled appointment with his probation officer, and had failed to make his child support payments. At his initial hearing, the trial court advised Davis of his right to counsel and appointed him a public defender. After advising Davis of his constitutional rights, the effect of any admission or denial of the allegations, and the possible sanctions, the trial court accepted Davis' admission to the probation violations. At the dispositional hearing, the trial

court modified Davis' sentence to seven years and ordered Davis to serve the first two years with the DOC. The trial court suspended the remaining five years to probation.

[4] Davis failed to report to begin serving the executed portion of his sentence. As a result, on April 7, 2010, the State filed its second notice of probation violation. By December 27, 2011, Davis was back in custody, and the trial court ordered him to commence serving the two years it had previously imposed. Davis completed the executed portion of his sentence on September 20, 2012, and was returned to probation.

[5] On February 19, 2013, the State filed its third notice of probation violation, alleging, among other things, that Davis had recently been arrested for domestic violence. At the initial hearing on this latest notice of violation, Davis was advised of his right to counsel and was appointed a public defender. Davis entered into a pre-trial diversion agreement pursuant to which the State agreed to dismiss the pending domestic violence charge if Davis complied with his probation and did not commit any new offenses for one year.

[6] The State filed its fourth notice of probation violation on January 28, 2014, in which it alleged, among other things, that Davis had failed to report for scheduled appointments with his probation officer and that he had failed to make scheduled child support payments. By June of 2014, Davis was in custody in Elkhart County, having violated his probation in an unrelated matter. The initial hearing on the State's fourth notice of probation violation

was held on June 25, 2014. The trial court advised Davis of his right to counsel and appointed him a public defender. On July 24, 2014, after having been advised of his constitutional rights, the effect of any admission or denial, and possible sanctions, Davis admitted the allegations contained in the State's notice of violation. On December 18, 2014, the trial court returned Davis to probation for the remaining portion of his suspended sentence.

[7] The State filed its fifth notice of probation violation on June 27, 2016, alleging, among other things, that Davis had violated the terms of his probation by being arrested for the new offenses of disorderly conduct, resisting law enforcement, and criminal mischief. At the August 1, 2016, initial hearing, the trial court advised Davis of his right to counsel. Davis indicated that he wished to hire an attorney, and the trial court granted him an extension of time to do so. On October 6, 2016, the trial court granted Davis another extension of time to retain a lawyer. By December 15, 2016, Davis had not yet retained counsel. The trial court asked Davis if he required a public defender. Davis initially indicated that he desired a public defender but then requested that the trial court grant him an additional extension to hire counsel. The trial court granted Davis an extension until March of 2017 to retain counsel.

[8] On March 9, 2017, Davis appeared without private counsel at a status hearing on the State's fifth notice of probation violation. Although Davis admitted in open court that he would fail a drug test if subjected to one that day, the trial court denied the State's request to incarcerate Davis pending trial. Davis

indicated his desire to hire an attorney once he received his income tax refund.

The trial court set the matter for trial and advised Davis as follows:

> At that, the State will call witnesses to show that you've violated your probation and argue that you go to prison I would assume or possibly argue that you go to prison on this. If you show up without an attorney you will have waived your right to an attorney and I need to tell you now that, that you may be a very bad disadvantage by showing up without an attorney. . . . And as you were advised over six (6) months ago if you can't afford an attorney or nine (9) months ago the court will appoint one for you but you've chosen not to ask for that and that's your right not to ask for a public defender and to either hire your own attorney, it's also your right to represent yourself but you do need to understand that you may, you will be going against skilled trial attorneys who are knowledgeable about the law, and I don't know what sort of experience you have in the law or any sort of training or knowledge that you have but I do need to warn you the dangers of going forward because you will be expected and held in the same standard as an attorney in interviewing, in asking questions of witnesses, in objecting to possible objectionable uh, information or evidence that the State is trying to get in that could be kept out of evidence against you with a proper and timely objection uh, you will be required to uh, question your own witnesses from the witness stand uh, cross examine witnesses called by the State, make proper objections, make appropriate closing arguments and opening statements and an attorney could also possibly negotiate with the prosecutor to try to resolve this short of the fact finding hearing. But this has been going on since August.

Transcript, Volume 2 at 22-23. The trial court then asked Davis if he understood the dangers of coming to the trial date without an attorney, and Davis confirmed that he did. The trial court also advised Davis that if he

changed his mind and wished to request a public defender, he should notify the court within two weeks in order to allow his public defender adequate time to prepare. On April 27, 2017, Davis appeared without an attorney and admitted to the allegations contained in the State's fifth notice, pursuant to an agreement with the State under which he would pay increased child support and be returned to probation. The trial court accepted the State's recommendation to return Davis to probation but counseled him, "don't count on having another chance after this." *Id.* at 34. The trial court commended Davis on his progress and noted that "if you relapse and start using again that everything is going to fall apart in your life including in this case and going to prison for this time." *Id.*

[9] On July 17, 2017, the State filed its sixth notice of probation violation in which it alleged, among other things, that Davis had missed scheduled addictions treatment, had tested positive for alcohol, and had failed to make scheduled child support payments. At the initial hearing on the newest violation notice, the trial court advised Davis of the nature of the new allegations. The trial court advised Davis that if he was found to have violated his probation, he could be continued on probation under the same or different terms, for the same or a different period of time, or he could be ordered to serve up to the amount of time that had been suspended. Davis indicated that he understood, and the trial court asked him if he would be hiring an attorney. Davis replied that he would if he could be released upon his own recognizance. The trial court

denied that request.  The trial court set the matter for an August 31, 2017, hearing on the violation.

[10]  Davis was not released on bond prior to the August 31 hearing.  On August 15, 2017, the trial court received a letter from Davis in which he requested to be reinstated to probation.  Davis told the trial court, "Sir[,] I'm guilty of every violation . . . ."  Appellant's Appendix, Volume II at 124.  In a second letter filed with the trial court on August 24, 2017, Davis wrote as follows:

> * Pro Se *
>
> So now Timothy J. Davis comes before the courts pleading guilty to my violations seeking a O.R. bond to obtain immediate employment . . . .

*Id*. at 126.

[11]  At the August 31 hearing, Davis appeared without counsel.  Davis indicated to the trial court when asked that he was representing himself at the hearing. Davis did not respond when the trial court asked him if he would like to attempt to qualify for a public defender.  Davis indicated that he wished to admit the violations.  Davis confirmed when asked that he had not consumed any intoxicants in the previous twenty-four hours.  The trial court asked Davis, "And you do you [sic] the right to be represented by an attorney as I mentioned and if you can't afford one the court will appoint one and you wish to give that up, is that right?"  Tr., Vol. 2 at 43.  Davis responded, "Yes."  *Id*.  The trial court reiterated the possible sanctions following a probation violation admission

as well as the trial process rights he was waiving. Davis confirmed again that he understood that he had a right to an attorney and that he was waiving that right.

[12] Davis admitted to a factual basis for his plea, and the trial court found that he had violated his probation. The trial court ordered Davis to serve his previously modified and suspended seven-year sentence, with credit for the two years he had already served. This appeal ensued.

## Discussion and Decision

[13] Davis contends that his waiver of his right to counsel for his sixth probation violation was not knowing, voluntary, and intelligent because the trial court failed to make adequate inquiries and advisements to establish a valid waiver.

## I. Direct Appeal Challenge

[14] We begin by addressing the State's argument that Davis may not properly challenge the validity of his waiver of counsel on direct appeal. Rather, the State asserts that the validity of a guilty plea to a probation violation may only be challenged through a petition for post-conviction relief. The State relies in part on *Tumulty v. State*, 666 N.E.2d 394, 396 (Ind. 1996), in which our supreme court held that post-conviction relief, not a direct appeal, is the proper vehicle for challenging a conviction that is the result of a guilty plea. *See* State's Brief of Appellee at 9. Another panel of this court has applied *Tumulty* to probation

revocations. *See Huffman v. State*, 822 N.E.2d 656, 659-60 (Ind. Ct. App. 2005) (relying on Post-Conviction Rule 1(1)(a)(5)).

[15] However, several other cases on direct appeal have addressed the merits of a probationer's claim that his waiver of counsel was invalid. *Sparks v. State*, 983 N.E.2d 221 (Ind. Ct. App. 2013); *Hammerlund v. State*, 967 N.E.2d 525 (Ind. Ct. App. 2012); *Butler v. State*, 951 N.E.2d 255 (Ind. Ct. App. 2011); *Cooper v. State*, 900 N.E.2d 64 (Ind. Ct. App. 2009); *Eaton v. State*, 894 N.E.2d 213 (Ind. Ct. App. 2008), *trans. denied*. Given that our supreme court has yet to expressly extend *Tumulty* to probation revocation proceedings as well as our preference for deciding cases on the merits, we will address Davis' arguments in this direct appeal.

## II. Knowing, Voluntary, and Intelligent Waiver

[16] Although probation is a favor granted by the State and not a right to which a defendant is entitled, a defendant still has some due process protections before his probation may be revoked. *Cooper*, 900 N.E.2d at 66. One of those due process protections is the right to be represented by counsel. Ind. Code § 35-38-2-3(e). If a defendant elects to proceed without counsel, the record must reflect that he waived his right to counsel knowingly, voluntarily, and intelligently. *Cooper*, 900 N.E.2d at 66.

[17] There are no specific words or phrases that a trial court must utter to produce a valid waiver of counsel by a defendant. *Hammerlund*, 967 N.E.2d at 527-28. Rather, "determining if a defendant's waiver was knowing and intelligent

depends on the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Eaton*, 894 N.E.2d at 218 (citations and quotation marks omitted). "We review de novo a trial court's finding that a defendant waived his right to counsel." *Butler*, 951 N.E.2d at 260.

[18] In *Hammerlund*, the trial court advised the defendant that he had the right to be represented by counsel during his probation revocation proceedings and that a public defender would be appointed for him if he could not afford counsel. 967 N.E.2d at 525-26. In addition, the trial court advised Hammerlund that, in the event he was found to have violated his probation, the trial court could continue him on probation, modify the conditions of his probation, or order him to serve his suspended sentence. *Id*. at 526. Hammerlund indicated that he understood his rights and had no questions about them. *Id*. at 529. The court on appeal held that, based on the totality of these circumstances, Hammerlund had knowingly, intelligently, and voluntarily waived his right to counsel before admitting to violating his probation. *Id*.

[19] Here, at Davis' initial hearing on the instant probation violations, the trial court advised Davis of the nature of the allegations against him and advised him of the possible sanctions should he be found to have violated his probation. Although the trial court did not advise Davis that he had a right to counsel at public expense at this initial hearing, our examination of the record indicates that the trial court had advised Davis of that right at every other initial hearing held on the probation violations in this matter and that counsel was appointed

for Davis for three of his previous violation proceedings. In light of Davis' experience in this case alone, we conclude that, despite the trial court's failure to expressly advise him at this initial hearing that he had a right to counsel at public expense, Davis was aware of that right yet expressed his desire to hire private counsel.

[20] Furthermore, before proceeding at the evidentiary hearing on August 31, 2017, the trial court asked Davis if he would like to attempt to qualify for a public defender. Davis did not answer, but he did indicate that he intended to admit to the violations. Before accepting his admission, the trial court twice confirmed with Davis that he knew that he had a right to counsel at public expense but that he chose to forgo it. Because Davis received essentially the same advisements and inquiries at issue in *Hammerlund*, under the totality of the circumstances, we conclude that Davis' waiver of counsel was knowing, voluntary, and intelligent.

[21] Davis contends that "[d]espite these circumstances suggesting Davis was unemployed and the trial court's knowledge of Davis's substantial payment delinquencies, the trial court did not appoint counsel for Davis." Amended Brief of the Appellant at 17. This argument confounds the issues of waiver of counsel and ability to pay and ignores the fact that Davis indicated to the trial court at his initial hearing that he wished to hire private counsel, which he was entitled to do.

[22] Davis further argues that the trial court should have made more inquiries regarding his decision to proceed pro se, his understanding of the dangers of self-representation, his education and background, and the context of his decision to plead guilty. *Id*. at 19-22. We note that it may always be alleged that a trial court could have provided more advisements or made more inquiries into a defendant's decision to proceed pro se. As to understanding the dangers of self-representation and the context of Davis' decision to admit the violations, when a probationer proceeds pro se and chooses to admit the alleged violation, his valid waiver of counsel may be established even if he was not advised of the pitfalls of self-representation. *Hammerlund*, 967 N.E.2d at 528. Davis filed two letters with the trial court prior to the August 31 hearing expressing his desire to admit to the allegations, and, in any event, the trial court had just months before provided Davis with detailed warnings regarding the dangers of self-representation. Given that there are no specific words or phrases that a trial court must use to establish a valid waiver of counsel, *Eaton*, 894 N.E.2d at 218, and given the particular circumstances of this case, we conclude that Davis' waiver of counsel was knowing, voluntary, and intelligent.

# Conclusion

[23] Concluding that Davis knowingly, voluntarily, and intelligently waived his right to counsel before admitting to violating his probation, we affirm the trial court's revocation order.

[24] Affirmed.

Najam, J., and Altice, J., concur.