## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 22 2020, 5:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Megan Shipley
Marion County Public Defender Agency
– Appellate Division
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James A. Holder, Sr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | May 22, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-1927 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James K. Snyder, Magistrate <br><br> Trial Court Cause No. <br> 49G02-1708-F3-32259 |

**Mathias, Judge.**

[1] James Holder ("Holder") appeals the Marion Superior Court's order revoking his probation. He argues that he did not knowingly, intelligently, and voluntarily waive his right to counsel.

[2] We affirm.

## Facts and Procedural History

[3] On February 22, 2018, Holder was convicted of Level 5 felony carrying a handgun without a license. He was ordered to serve four years with two years executed in the Department of Correction, one year executed in Community Corrections, and one year suspended to probation. Holder represented himself at trial, and prior to making the decision to proceed pro se, he was given the appropriate advisements about the dangers of self-representation. *See* Appellant's Br. Addendum pp. 10–19.

[4] Holder completed his two-year executed sentence on December 29, 2018, and he began to serve his one-year executed sentence in Community Corrections. On June 14, 2019, Community Corrections filed a notice of community corrections violation. Shortly thereafter, the probation department filed a notice of probation violation alleging that Holder failed to comply with the terms of his home detention.

[5] At the initial hearing, Holder was asked whether he had the funds to hire private counsel or whether he was requesting a public defender. Holder informed the trial court that he planned to represent himself. The trial court advised Holder as follows:

THE COURT: Thank you. Mr. Holder how old are you today.

THE DEFENDANT: . . . But I'm 36.

THE COURT: Ok. Are you under the influence of any alcohol or drugs today?

THE DEFENDANT: No.

THE COURT: Do you suffer from any emotional or mental disabilities?

THE DEFENDANT: No.

THE COURT: Mr. Holder it is my understanding based on what you have said to me that you wish to represent yourself. Is that true?

THE DEFENDANT: Yes.

THE COURT: Did you graduate High School Sir?

THE DEFENDANT: Yes.

THE COURT: Did you graduate college?

THE DEFENDANT: ... [N]o I didn't graduate college.

THE COURT: And what about Law School then?

THE DEFENDANT: I, no I didn't graduate Law School.

THE COURT: Do you have any formal legal training Sir?

THE DEFENDANT: Um, I took as far as Federal Aviation Regulations in AIM and I've, well I represented myself in this trial. I was my own lawyer and proper persona in the trial.

THE COURT: So you were convicted?

THE DEFENDANT: Yeah, well yeah.

THE COURT: Ok. So how did you think your performance was during that trial Sir?

THE DEFENDANT: Based on the unconstitutional things that happened at trial, I mean and everything else, I think I did very good.

THE COURT: Ok. So you feel convertible [sic] representing yourself in a violation case as well?

THE DEFENDANT: Yeah. Well as far as…

THE COURT: Have you read the Indiana code related to probation and or community corrections violations?

THE DEFENDANT: Actually I had it with me when I got locked up. It, because I was prepared for this but… told me I couldn't bring none of my law, my ID or nothing with me when I got locked up so.

THE COURT: Ok.

THE DEFENDANT: I mean. I'm prepared enough compared.

THE COURT: Do you understand that you are facing potential prison time for this violation?

THE DEFENDANT: Yes.

THE COURT: And you understand that as a result of that you have an absolute right to an attorney to represent you during all of those proceedings?

THE DEFENDANT: Yes Sir.

THE COURT: And it is your desire to waive that right?

THE DEFENDANT: Yes.

THE COURT: Do you feel like you are doing so freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Has anyone forced you, promised you anything of value given you anything? Threatened you in any way in order to make you waive your right to counsel?

THE DEFENDANT. No.

THE COURT: So you are doing so of your own free will?

THE DEFENDANT: Yes.

June 20, 2019 Tr. pp. 2–4. The trial court accepted Holder's waiver of counsel. After Holder requested a contested hearing on the community corrections and probation violations, the court set the revocation hearing for July 18, 2019.

[6] Throughout the initial hearing and the July 18, 2019 revocation hearing, Holder challenged the trial court's jurisdiction over him. He requested a ruling on his "Averment of Jurisdiction Quo Warranto," which was filed on December 10, 2018, approximately two weeks before he was released from the Department of Correction and well before the notice of violations were filed by the probation department at issue in this appeal. Appellant's App. pp. 97–106. The trial court repeatedly informed Holder that he was not entitled to relief on his filing and that the trial court's jurisdiction over him could not be contested. *See e.g.* June 20, 2019 Tr. pp. 7–8; July 18, 2019 Tr. p. 4.

[7] At the July 18, 2019 revocation hearing, the State presented evidence from Holder's tracking device that he had violated the terms of his home detention. The trial court found that the State had proved ten of the fourteen alleged community corrections violations. The court revoked Holder's community corrections placement and probation and ordered him to serve the balance of his original four-year sentence in the Department of Correction. Holder now appeals.

## Discussion and Decision

[8] Holder argues that he did not knowingly, intelligently, and voluntarily waive his right to counsel in the probation revocation proceedings.

Probation is a favor granted by the State, not a right to which a criminal defendant is entitled. However, once the State grants that favor, it cannot simply revoke the privilege at its discretion. Probation revocation implicates a defendant's liberty interest, which entitles him to some procedural due process. Because probation revocation does not deprive a defendant of his absolute liberty, but only his conditional liberty, he is not entitled to the full due process rights afforded a defendant in a criminal proceeding.

*Eaton v. State*, 894 N.E.2d 213, 216 (Ind. Ct. App. 2008), *trans. denied* (internal citations omitted).

[9] A defendant in a probation revocation hearing is entitled to representation by counsel. Ind. Code § 35-38-2-3(f) (2019); *see also Hodges v. State*, 997 N.E.2d 419, 421 (Ind. Ct. App. 2013) ("[A] person serving a community corrections placement is entitled to certain due process protections before the placement is revoked, including the right to counsel."). However, a defendant may waive his right to counsel and proceed pro se. *Cooper v. State*, 900 N.E.2d 64, 66 (Ind. Ct. App. 2009). When he does so, "the record must reflect that the right to counsel was voluntarily, knowingly, and intelligently waived." *Silvers v. State*, 945 N.E.2d 1274, 1276 (Ind. Ct. App. 2011). That is, "[t]he record must show that the probationer was made aware of the nature, extent, and importance of the right to counsel as well as the necessary consequences of waiving such a right." *Id.* We review de novo whether a probationer validly waived his right to counsel. *Id.*

[10] There are no specific words or phrases that a trial court must utter to produce a valid waiver of counsel by a defendant. *Hammerlund v. State*, 967 N.E.2d 525, 527–28 (Ind. Ct. App. 2012). Rather, "determining if a defendant's waiver was knowing and intelligent depends on the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Eaton,* 894 N.E.2d at 218 (citations and quotation marks omitted).

[11] Holder argues that we should apply the factors enumerated in *Poynter v. State,* 749 N.E.2d 1122 (Ind. 2001) to determine whether his waiver of counsel was knowing, voluntary, and intelligent. But the *Poynter* factors apply to waiver of counsel for a criminal defendant entitled to the Sixth Amendment right to counsel at trial. *See Poynter*, 749 N.E.2d at 1125–28. An individual serving a sentence in community corrections or on probation is not entitled to the full array of constitutional rights afforded to defendants at trial, including the Sixth Amendment right to counsel. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999) (discussing due process rights for a hearing on a petition to revoke placement in community corrections). The United States Supreme Court has held that there is no Sixth Amendment right to counsel with respect to a probation revocation proceeding. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973) (explaining that "[p]robation revocation . . . is not a stage of criminal prosecution" and holding that a probationer, who has already been sentenced, does not have a constitutional right to appointed counsel).

[12] Holder's right to counsel at a revocation hearing is bestowed by statute rather than by constitution. *See* I.C. § 35-38-2-3(f). The State concedes that the *Poynter*

factors are relevant to waiver of counsel in a probation revocation proceeding, but a waiver of a statutory right requires less inquiry than a waiver of a constitutional right. *See* Appellee's Br. at 16 n.4.

[13] Holder voluntarily waived his right to counsel at his criminal trial and represented himself. He did not challenge that waiver on appeal. The trial court gave the appropriate advisements required by *Poynter*.[1] *See* Appellant's Br. Addendum pp. 10–19.

[14] The colloquy quoted above established that Holder was informed that he had a right to an attorney, that he understood that right, and that the trial court sufficiently inquired whether Holder's decision to represent himself was knowing and voluntary. The trial court inquired into Holder's educational background and his mental state. Holder's familiarity with the criminal justice system is apparent given that he represented himself in his criminal trial. At the revocation hearing, he cross-examined the State's witnesses and objected to the admission of evidence. He also presented argument in his defense of the allegations.

[15] Moreover, although the trial court did not specifically advise Holder of the dangers and disadvantages of self-representation, the trial court advised Holder

---

[1] In *Poynter*, our supreme court adopted four factors to consider when determining whether a defendant has knowingly, voluntarily, and intelligently waived his right to counsel: (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. 749 N.E.2d at 1127–28).

that if the violations were proven, he would be facing prison time. The court also noted Holder's self-representation at his criminal trial, and Holder stated that he felt he represented himself well.

In his brief, Holder cites to his statement at the revocation hearing that he was not prepared. July 18, 2019 Tr. p. 12. Holder's statement must be considered in the context that it was made. Holder refused to abandon his claim that the trial court lacked jurisdiction over him. Even though Holder was advised that the revocation hearing would be a contested fact-finding hearing on the community corrections and probation violation allegations, he argued that the trial court could not proceed on those allegations until it addressed his jurisdictional arguments. *See* July 18, 2019 Tr. pp. 12–14, 18, 20, 32–34. His lack of preparedness stemmed from his unwavering, erroneous belief that the trial court lacked jurisdiction over him despite having received numerous advisements to the contrary.

## Conclusion

Having received more than adequate warnings concerning the dangers and disadvantages of self-representation prior to his waiver of counsel during his criminal proceedings, and having proceeded pro se during those proceedings, we conclude that Holder was aware of the danger of representing himself. Given the totality of the circumstances in this case, we conclude that Holder knowingly, intelligently, and voluntarily waived his right to counsel in these probation revocation proceedings.

[18]    Affirmed.

Riley, J., and Tavitas, J., concur.