# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 15 2016, 8:59 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Joanna Green
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Theodore T. Schwartz,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 15, 2016

Court of Appeals Cause No.
01A02-1507-PC-872

Appeal from the Adams Circuit Court

The Honorable Chad E. Kukelhan, Judge

Trial Court Cause No.
01C01-1109-PC-4

**Barnes, Judge.**

## Case Summary

[1] Theodore Schwartz appeals the post-conviction court's denial of his petition for post-conviction relief. We affirm.

# Issues

[2] Schwartz raises four issues, which we restate as:

I. whether Schwartz was denied his right to counsel at the initial hearing;

II. whether he was denied the right to a fair and impartial judge;

III. whether he was denied the effective assistance of trial counsel; and

IV. whether his guilty plea was knowing, voluntary, and intelligent.

# Facts

[3] On August 11, 2009, Schwartz was arrested in Adams County for possession of methamphetamine within 1,000 feet of school property. After being taken to the police station, Schwartz escaped and went on a crime spree that included additional offenses in Allen County and Wells County.[1] He was eventually

---

[1] In Allen County, the State charged Schwartz with Class A felony rape, two counts of Class A felony criminal deviate conduct, Class A felony burglary, Class A felony robbery, Class B felony criminal confinement, Class C felony battery, Class C felony forgery, Class D felony strangulation, Class D felony auto theft, Class D felony receiving stolen auto parts, Class B felony dealing in methamphetamine, Class D felony possession of methamphetamine, Class D felony possession of reagents with intent to manufacture, and Class D felony possession of a controlled substance. *Schwartz v. State*, 02A05-1010-CR-714, slip op. at 3 (Ind. Ct. App. Mar. 31, 2011), *trans. denied*. On August 20, 2010, Schwartz pled guilty to rape, two counts of criminal deviate conduct, burglary, robbery, criminal confinement, battery, strangulation, and auto theft. The trial court sentenced Schwartz to 100 years in the Department of Correction.

apprehended in Wells County. In Adams County, the State charged him with Class A felony dealing in methamphetamine, Class B felony possession of methamphetamine, Class C felony escape, and Class D felony escape.

[4] Schwartz's initial hearing was held on August 28, 2009, and the trial court appointed a public defender, Thomas Sheets, for Schwartz. At the initial hearing, the trial court informed Schwartz that he and the prosecutor owned a building together and that Schwartz had twenty days to file a motion for change of judge based on that relationship. In the order on the initial hearing, which was served on Sheets, the trial court noted that he and the prosecutor were previous law partners and were co-owners of a building in which other attorneys practiced. Attorney Stanley Campbell entered his appearance for Schwartz in November 2009.

[5] On January 20, 2010, Schwartz's Wells County attorney, Larry Mock, filed a petition in the Wells County proceeding for appointment of medical experts to determine Schwartz's ability to assist in his defense. In the petition, Mock alleged that Schwartz "relates that he is in contact with demons and frequently talks to God who apparently is giving legal advice to Defendant." Ex. 9 p. 1.

---

In Wells County, the State charged Schwartz with Class B felony burglary, two counts of Class C felony robbery, Class D felony residential entry, Class D felony auto theft, and Class D felony resisting law enforcement. *Schwartz v. State*, No. 90A04-1102-CR-109, slip op. at 2 (Ind. Ct. App. Aug. 19, 2011), *trans. denied*. On October 14, 2010, Schwartz pled guilty as charged, and the trial court sentenced him to an aggregate sentence of fifteen years to be served consecutive to the Allen County and Adams County sentences.

The Wells County trial court appointed medical experts to examine Schwartz and determine whether he had sufficient comprehension to understand the nature of the criminal action pending against him and to assist in his own defense. However, in October 2010, Mock withdrew the petition for appointment of medical experts, and Schwartz pled guilty in Wells County.

[6] On February 14, 2011, Schwartz pled guilty in Adams County to Class B felony possession of methamphetamine and Class C felony escape and admitted to being an habitual substance offender. The State dismissed the remaining charges. Schwartz agreed that "[a]ll terms of [the] sentence shall be in the Court's discretion." Ex. 3 p. 2. Further, Schwartz waived his right to appeal the sentence imposed by the trial court, including the right to appeal under Indiana Appellate Rule 7 and the right to appeal "the trial court's finding and balancing of mitigating and aggravating factors or to challenge the sentence imposed . . . ." *Id.* The trial court sentenced Schwartz to fifteen years for the methamphetamine conviction enhanced by eight years for his status as an habitual substance offender and consecutive to a six-year sentence for the escape conviction for an aggregate sentence of twenty-nine years in the Department of Correction. The trial court ordered that the sentence also be consecutive to the sentence imposed for the Allen County convictions.

[7] In September 2011, Schwartz filed a pro se petition for post-conviction relief, which was amended in November 2014. Schwartz argued that his due process rights were violated when he was denied his right to a fair and impartial judge, that he was denied his right to counsel when he was informed of the business

relationship between the judge and the prosecutor at the initial hearing, that his guilty plea was not knowing, voluntary, and intelligent, and that he was denied the effective assistance of trial counsel. At the evidentiary hearing, Schwartz called Mock and Campbell as witnesses. After the evidentiary hearing, the post-conviction court entered findings of fact and conclusions of law denying Schwartz's petition. Schwartz now appeals.

## Analysis

[8]     Schwartz argues that the post-conviction court's denial of his petition is clearly erroneous. A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. *Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009) (citing Ind. Post-conviction Rule 1(6)). "The findings must be supported by facts and the conclusions must be supported by the law." *Id.* Our review on appeal is limited to these findings and conclusions. *Id.* Because the petitioner bears the burden of proof in the post-conviction court, an unsuccessful petitioner appeals from a negative judgment. *Id.* (citing P-C.R. 1(5)). "A petitioner appealing from a negative judgment must show that the evidence as a whole 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'" *Id.* (quoting *Allen v. State*, 749 N.E.2d 1158, 1164 (Ind. 2001), *cert. denied*). Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Id.*

## I. Right to Counsel[2]

Schwartz argued in his petition for post-conviction relief that, although the relationship between the judge and the prosecutor was disclosed to him at his initial hearing, he was unrepresented at the time. According to Schwartz, the "disclosure of the relationship made the initial hearing a critical stage of the proceedings. . . ." App. p. 58.

Schwartz first notes that the post-conviction court failed to enter findings of fact or conclusions of law on this particular issue. Indiana Post-Conviction Rule 1(6) provides: "The court shall make specific findings of fact, and conclusions of law on all issues presented, whether or not a hearing is held." However, a post-conviction court's failure to enter specific findings of fact and conclusions of law in ruling on a post-conviction petition is not reversible error when the issues are sufficiently presented for review and addressed by the parties. *Adcock v. State*, 22 N.E.3d 720, 724 (Ind. Ct. App. 2014). If the facts underlying a claim are not in dispute, the issues are sufficiently clear, and both parties address the merits in their briefs, remand for specific findings by the post-conviction court is not necessary. *Id.* The underlying facts here are not in

---

[2] Although not raised by the State, we note that "Defendants who plead guilty to achieve favorable outcomes forfeit a plethora of substantive claims and procedural rights." *Alvey v. State*, 911 N.E.2d 1248, 1250-51 (Ind. 2009). Further, our supreme court has repeatedly emphasized that in "post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). However, because both parties address Issue I and Issue II on the merits and the State does not raise waiver, we do not address whether the issues are properly raised. Instead, we will address the issues on the merits.

dispute, the issue is sufficiently clear, and both parties address the merits in their briefs. Consequently, we will address the issue rather than remanding to the post-conviction court.

[11] Our supreme court has held that a defendant's right to counsel arises at any point during a criminal proceeding in which the absence of counsel would erode the defendant's right to a fair trial. *Hopper v. State*, 957 N.E.2d 613, 616 (Ind. 2011). This includes any critical stage in which "(1) incrimination may occur or (2) where the opportunity for effective defense must be seized or be foregone." *Id.* (internal quotations omitted). "An initial hearing conducted under Indiana's statutory scheme is not a critical stage of the criminal proceeding requiring the presence of counsel." *Id.* at 616-17.

[12] Schwartz argues that the initial hearing was, in fact, a critical stage of the proceeding because the trial court informed him of the judge's business relationship with the prosecutor. Schwartz was, however, appointed an attorney at the initial hearing, and that attorney was served with the order regarding the initial hearing, which detailed the business relationship. Schwartz's attorney was presumably aware of the alleged conflict[3] and had the opportunity to file a motion for change of judge. Schwartz has not

---

[3] At that time, Schwartz was represented by Thomas Sheets. However, Schwartz did not call Sheets to testify at his post-conviction hearing.

demonstrated that he was denied his right to counsel at a critical stage of the proceedings.

## II. Right to Unbiased Judge

[13] Schwartz argued in his petition for post-conviction relief that he was denied the right to a fair and impartial judge as a result of the business relationship between the judge and the prosecutor. The post-conviction court rejected this argument and found "the Petitioner was adequately informed of the relationship between the judge and the prosecutor and [had] the opportunity to exercise his right to a different judge. Furthermore, the Petitioner presented no evidence of prejudice or harm he suffered as a result of his failure to seek a different judge." App. pp. 94-95.

[14] In general, a motion for a change of judge is governed by Indiana Criminal Rule 12(B), which provides:

> In felony and misdemeanor cases, the state or defendant may request a change of judge for bias or prejudice. The party shall timely file an affidavit that the judge has a personal bias or prejudice against the state or defendant. The affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

Schwartz presented no rational inference that the judge had a personal bias or prejudice against him. Consequently, there is little likelihood that a motion for change of judge under Rule 12(B) would have been granted.

[15] Schwartz argues, however, that the judge's business relationship violated Indiana Judicial Conduct Canon 3.11 and that the judge would have been required under the Judicial Conduct Canons to recuse. Canon 3.11 provides:

> A judge shall not engage in any business, financial, or other remunerative activity if engaging in the activity would:
>
> (1)    interfere with the proper performance of judicial duties;
>
> (2)    lead to frequent disqualification of the judge;
>
> (3)    involve the judge in frequent transactions or continuing business relationships with lawyers or other persons likely to come before the court on which the judge serves; or
>
> (4)    result in violations of other provisions of this Code.

[16] Our court has previously clarified that "because the Indiana Supreme Court has exclusive jurisdiction over alleged violations of the Code of Judicial Conduct, we cannot determine whether a trial court judge violated a Judicial Canon." *In re Guardianship of Hickman*, 805 N.E.2d 808, 814-15 (Ind. Ct. App. 2004), *trans. denied*. However, Schwartz cites *Voss v. State*, 856 N.E.2d 1211, 1221 (Ind. 2006), where our supreme court held that "the Judicial Canons may provide an

independent basis requiring disqualification even if the analysis required for determination under Criminal Rule 12(B) would not require a change of judge."

[17] We note that, despite the language of Canon 3.11, disqualification of a judge is governed by Canon 2.11(A), which provides that "A judge shall disqualify himself . . . in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances . . . (3) The judge knows that he . . . has an economic interest in the subject matter in controversy or in a party to the proceeding that could be substantially affected by the proceeding."  Thus, "the true question is whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality."  *Sisson v. State*, 985 N.E.2d 1, 19 (Ind. Ct. App. 2012), *trans. denied*.

[18] In support of his argument, Schwartz relies on *Patterson v. State*, 926 N.E.2d 90 (Ind. Ct. App. 2010), which we find readily distinguishable from this case.  In *Patterson*, the trial judge had previously served as prosecutor in the same criminal matter for which the defendant stood trial.  *Patterson*, 926 N.E.2d at 92. Canon 2.11(A)(6) requires disqualification under such circumstances.  *See* Ind. Judicial Conduct Canon 2.11(A)(6)(a) (noting that a judge shall disqualify himself where the judge "served as a lawyer in the matter in controversy").

[19] Here, there is no indication that the judge's business interest could have been substantially affected by Schwartz's criminal proceeding.  We cannot say that an objective person, knowledgeable of all the circumstances, would have a

reasonable basis for doubting the judge's impartiality in Schwartz's proceeding. The post-conviction court did not err by denying Schwartz's claim.

### III. Ineffective Assistance of Trial Counsel

Schwartz next argues that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *cert. denied*. A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

Schwartz's conviction was pursuant to a guilty plea. A post-conviction claim challenging a conviction pursuant to a guilty plea is examined under *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). *Segura* categorizes two main types of ineffective assistance of counsel cases: (1) failure to advise the defendant on an

issue that impairs or overlooks a defense, and (2) an incorrect advisement of penal consequences. *Smith v. State*, 770 N.E.2d 290, 295 (Ind. 2002). In order to set aside a conviction because of an attorney's failure to raise a defense, a petitioner who has pled guilty must establish that a defense was overlooked or impaired and that the defense would likely have changed the outcome of the proceeding. *Segura*, 749 N.E.2d at 499. "[I]f counsel's shortcomings are claimed to have resulted in a lost opportunity to mitigate the penalty, in order to obtain a new sentencing hearing, the petitioner must show a reasonable probability that the oversight would have affected the sentence." *Id.*

### *A. Competency*

[22]    Schwartz argues that his trial counsel should have requested a competency evaluation and ensured that he was competent to plead guilty. The post-conviction court found:

> [T]he Petitioner at no point in the underlying case asked for a competency evaluation. He did seek a competency evaluation in another pending case in the Wells Circuit Court, Cause No. 90C01-0908-FB-0022. In that case, Petitioner filed a Petition for Appointment of Medical Experts Pursuant to I.C. 35-36-3-1 on January 20, 2010. The petition was later withdrawn by the Petitioner in that cause on October 19, 2010. There was not a competency evaluation pending when the Petitioner pleaded guilty in the underlying cause in this court on February 14, 2011. Furthermore, both attorneys who represented the Petitioner in the cases in Wells and Adams Counties testified during the hearing on May 7, 2015 that they believed the Petitioner clearly understood the proceedings and they had no concerns about his ability to participate in the preparation of any defense. During the change of plea hearing, the court asked the Petitioner if he

suffered from any mental or emotional disability. The Petitioner stated he was medicated for depression but otherwise said, "I don't have anything else." Therefore, the court finds this claim to also be without merit.

App. pp. 93-94.

[23] Under *Segura*, Schwartz was required to prove that his trial counsel overlooked or impaired the defense and that the defense would likely have changed the outcome of the proceeding. Schwartz's counsel in the Wells County proceedings requested a competency evaluation on January 20, 2010. However, on October 19, 2010, Schwartz's Wells County attorney withdrew his petition for appointment of medical experts. Schwartz's Wells County attorney testified that he withdrew the petition because he was comfortable that Schwartz "understood what was going on." Tr. p. 13. Schwartz then pled guilty in Adams County on February 14, 2011. Schwartz's Adams County attorney testified that they "were able to discuss facts of the case, defenses, strategies, possibilities, and [Schwartz] understood [their] conversations." *Id.* at 15. Schwartz presented no evidence concerning his mental health at the time of the Adams County proceedings and no evidence that a competency defense would have been successful. Schwartz had the burden of presenting evidence to support his allegations, and he did not meet his burden. We cannot say that the post-conviction court's order is clearly erroneous

### B. Habitual Substance Offender Sentencing Enhancement

[24] According to Schwartz, under Indiana Code Section 35-50-2-10(f)(1), his counsel should have argued for an habitual substance offender enhancement of only one year and failed to do so. At the time of Schwartz's sentencing, the habitual substance offender enhancement statute provided:

> The court shall sentence a person found to be a habitual substance offender to an additional fixed term of at least three (3) years but not more than eight (8) years imprisonment, to be added to the term of imprisonment imposed under IC 35-50-2 or IC 35-50-3. If the court finds that:
>
> (1)   three (3) years or more have elapsed since the date the person was discharged from probation, imprisonment, or parole (whichever is later) for the last prior unrelated substance offense conviction and the date the person committed the substance offense for which the person is being sentenced as a habitual substance offender;
>
> * * * * *
>
> then the court may reduce the additional fixed term. However, the court may not reduce the additional fixed term to less than one (1) year.

Ind. Code § 35-50-2-10(f) (repealed by P.L. 158-2013, § 664 (eff. July 1, 2014)).

[25] The trial court here imposed the maximum eight-year term for the habitual substance offender enhancement. Schwartz argues that his trial counsel was ineffective for failing to argue that Indiana Code Section 35-50-2-10(f)(1)

applied and requesting a one-year enhancement. The post-conviction court disagreed and found:

> [A]ll terms of the sentence were left to the court's discretion. The court was not obligated to limit the sentence to a term of one year. There is absolutely no evidence to indicate the court abused its discretion when it sentenced the Petitioner to serve 8 additional years as a result of being a habitual substance offender.

App. p. 93.

[26] Schwartz was required to show a reasonable probability that the alleged oversight would have affected his sentence. Perhaps if the trial court had imposed the regular minimum sentence of three years, Schwartz's argument would be more persuasive. However, the trial court here imposed the maximum, eight-year sentence even after his trial counsel pointed out that one of the prior offenses was eighteen years old. Under these circumstances, the post-conviction court's conclusion is not clearly erroneous. Schwartz failed to demonstrate a reasonable probability that the trial court would have imposed a one-year habitual substance offender enhancement.

### C. Change of Judge

[27] Schwartz contends that trial counsel was ineffective for failing to ask the trial court to recuse himself due to his business relationship with the prosecutor. The post-conviction court rejected this argument and found "the Petitioner was adequately informed of the relationship between the judge and the prosecutor and [had] the opportunity to exercise his right to a different judge.

Furthermore, the Petitioner presented no evidence of prejudice or harm he suffered as a result of his failure to seek a different judge." App. pp. 94-95.

[28] Given our discussion in Issue II, we cannot say that Schwartz's counsel was deficient for failing to file a motion for change of judge or that Schwartz was prejudiced by the alleged deficiency.[4] The record is devoid of any evidence that would suggest the trial court acted with bias toward Schwartz or that the eventual outcome of his sentencing hearing would have been any different had a motion for a change of judge been granted. Likewise, the record is devoid of any evidence that would suggest the length of the sentence imposed would have been any different had a timely motion for a change of judge been granted. As such, Schwartz's claim fails.

## IV. Guilty Plea

[29] According to Schwartz, his guilty plea was not knowingly, voluntarily, and intelligently entered. Post-conviction relief is a proper vehicle for challenging a guilty plea, and we look at all evidence before the post-conviction court that supports its determination that a guilty plea was voluntary, knowing, and intelligent. *Collins v. State*, 14 N.E.3d 80, 85 (Ind. Ct. App. 2014). "A post-

---

[4] At the time a motion for change of judge would have been filed, Schwartz was represented by Sheets. However, Schwartz did not call Sheets to testify at his post-conviction hearing. "When counsel is not called as a witness to testify in support of a petitioner's arguments, the post-conviction court may infer that counsel would not have corroborated the petitioner's allegations." *Oberst v. State*, 935 N.E.2d 1250, 1254 (Ind. Ct. App. 2010), *trans. denied*. Campbell entered his appearance in November 2009. Campbell testified that he had other cases in Adams County at that time and that he did not recall ever having filed a motion for the judge to recuse based on the judge's business relationship with the prosecutor.

conviction petitioner must be allowed to withdraw his previous guilty plea whenever the withdrawal 'is necessary to correct manifest injustice' that occurred because 'the plea was not knowingly and voluntarily made.'" *Richardson v. State*, 800 N.E.2d 639, 643 (Ind. Ct. App. 2003) (quoting *Lineberry v. State*, 747 N.E.2d 1151, 1156 (Ind. Ct. App. 2001)), *trans. denied*. Before accepting a guilty plea, a trial court is required to take steps to insure that a defendant's plea is voluntary. *Id.*; *see* Ind. Code §§ 35-35-1-2; 35-35-1-3. Generally speaking, if a trial court undertakes these steps, a post-conviction petitioner will have a difficult time overturning his guilty plea on collateral attack. *Id.*

[30] Schwartz argued that his guilty plea was involuntary because he "did not understand that he was giving up his right to challenge an erroneous sentence." App. p. 58. The post-conviction court concluded:

> The court notes the plea agreement, sections 4 (f), (g), and (h), all informed the Petitioner that by entering into the plea agreement, he was waiving his right to appeal his sentence. He waived his right to a trial with respect to any aggravating or mitigating factors. He waived his right to appeal the sentence pursuant to Rule 7 of the Indiana Rules of Appellate Procedure and specifically waived his right to challenge the sentence imposed by the trial court on the basis that the sentence is erroneous. The Petitioner's initials were placed by him at the beginning of each section 4 (f), (g), and (h) of the plea agreement. Therefore, the court now finds he was sufficiently advised of his waiver of appeal rights regarding the sentence imposed. Also, the Petitioner has not presented evidence of an erroneous sentence. Even if he could appeal the sentence, there is no evidence that the sentence imposed was erroneous.

*Id.* at 95.

A defendant may waive the right to appellate review of his sentence as part of a written plea agreement. *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008). Here, Schwartz expressly waived his right to appellate review of his sentence as part of his plea agreement. In the plea agreement, Schwartz waived his right to appeal the sentence imposed by the trial court, including the right to appeal under Indiana Appellate Rule 7 and the right to appeal "the trial court's finding and balancing of mitigating and aggravating factors or to challenge the sentence imposed . . . ." Ex. 3 p. 2. Schwartz initialed each provision of the plea agreement and signed the agreement. At the sentencing hearing, the trial court did not advise Schwartz of his rights under Indiana Criminal Rule 11, which include a right to appeal the sentence, due to the plea agreement provisions. *See* Ex. 1 p. 29. Schwartz did not testify at the post-conviction hearing. In support of his argument, Schwartz points only to the fact that he attempted to appeal his sentence. However, the post-conviction court found that Schwartz validly waived his right to appeal his sentence, and under these circumstances, we cannot say that the post-conviction court's finding is clearly erroneous. *See e.g., Creech*, 887 N.E.2d at 77 (holding that a petitioner's waiver of his right to appeal his sentence was valid despite the trial court's erroneous advisement at the sentencing hearing that he could appeal his sentence).

# Conclusion

[32] The post-conviction court's denial of Schwartz's petition for post-conviction relief is not clearly erroneous. We affirm.

[33] Affirmed.

Robb, J., and Altice, J., concur.